No. 55,531

Missouri Medical Insurance Company, *Plaintiff-Appellant/Cross-Appellee,* v. David; Wong, M.D., *Defendant-Appellee/Cross-Appellant,* Lynn Eugene Cleveland, Jack Jacobson, and Fletcher Bell, Commissioner of Insurance, as Administrator of the Health Care Stabilization Fund, *Defendants-Appellees.*

(676 P.2d 113)

Opinion filed January 24, 1984.

*Raymond L. Dahlberg,* of Turner and Boisseau, Chartered, of Great Bend,

argued the cause, and *Steven C. Day* and *James T. McIntyre,* of the same firm, of Wichita, were on the briefs for the appellant.

*J. Michael Gillaspie,* of Jochems, Sargent & Blaes, P.A., of Wichita, argued the cause, and *Alan D. Herman,* of the same firm, was with him on the brief for the defendant-appellee/cross-appellant, Dr. David Wong.

*Edward J. Hund,* of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause, and *Michael A. Rump,* of the same firm, and *David M. Hall,* of Hall & Hall, of Anthony, were with him on the brief for the defendant-appellee, Lynn Eugene Cleveland.

*Michael J. Dutton,* special assistant attorney general, Kansas Insurance Department, argued the cause and was on the brief for the defendant-appellee, Fletcher Bell.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Missouri Medical Insurance Company (MoMedico), for a declaratory judgment seeking cancellation and construction of a medical malpractice insurance policy issued to the defendant, Dr. David Wong. Plaintiff joined as additional defendants, Lynn Eugene Cleveland and Jack Jacobson, former patients of Dr. Wong, who had filed medical malpractice actions against Wong, and Fletcher Bell, Commissioner of Insurance, as administrator of the Health Care Stabilization Fund. MoMedico alleged in its petition that it had cancelled Wong's policy of professional liability insurance as of the date of issuance for material misrepresentations made in his application, and further alleged that the policy, as issued, covered only acts of negligence which *occurred* during the term of the policy rather than for *claims made* during the policy period. Defendant Wong filed a counterclaim seeking a determination that MoMedico was precluded from cancelling his medical professional liability insurance *ab initio,* and that the provisions of the Kansas Health Care Provider Insurance Availability Act (K.S.A. 40-3401 *et seq.*) require the policy to be construed as a claims made policy rather than an occurrence policy. Defendant Wong also claimed he was entitled to recover actual and punitive damages from MoMedico arising out of its attempted cancellation of the policy, and that he was also entitled to recover attorney fees from MoMedico incurred in the defense of the declaratory judgment action. The other named defendants also filed counterclaims which will be discussed later in the opinion.

The matter came regularly on for trial on November 1, 1982.

Counsel for MoMedico made his opening statement. Counsel for defendant Wong then moved for a directed verdict and for judgment as a matter of law. The trial court interpreted the motion as a motion for summary judgment, and entered summary judgment in favor of Dr. Wong. A hearing was then held on November 2, 1982, on the issues raised in the defendants' counterclaims. MoMedico has appealed from the judgments entered in favor of the various defendants. Defendant Wong filed a cross-appeal claiming that the district court erred in disallowing certain elements of damage claimed by Wong in his counterclaim.

The basic facts in this case were either stipulated or undisputed and are as follows: Defendant David Wong, M.D., began practicing medicine in the state of Kansas on or about July 1, 1975. At all times, he maintained professional medical liability insurance coverage as required by the Kansas Health Care Provider Insurance Availability Act (K.S.A. 40-3401 *et seq.*). St. Paul Fire & Marine Insurance Company advised Wong that it would not renew his professional liability insurance policy when it expired on June 30, 1980. On July 28, 1980, Wong purchased a policy of professional liability insurance from MoMedico which took effect on that date. The policy was purchased by Wong in person at MoMedico's office in St. Louis, Missouri. On his application for insurance, Dr. Wong listed both a Wichita address and a Cameron, Missouri, address. Thus on July 28, 1980, when it issued the policy, MoMedico's agents knew that Wong had both a Kansas and Missouri address. The insurance binder was mailed to Wong at his Wichita address. The policy was mailed to Dr. Wong at his Cameron, Missouri, address. The policy purchased by Dr. Wong provided professional liability insurance coverage and limits of $1,000,000 for each claim with a $1,000,000 annual aggregate. The policy was an occurrence form policy rather than a claims made policy. MoMedico knew at the time the policy was issued that Dr. Wong would render some professional care to persons in Kansas. For the basic coverage in Missouri, Dr. Wong paid a quarterly premium of $721, and for Kansas coverage he paid a quarterly premium of $72.10. Thereafter, Dr. Wong continued to render some medical services in Kansas until September 5, 1980. As of July 28, 1980, Dr. Wong had not received any written notice of any claim being made

against him by anyone. Defendant Jack Jacobson filed a medical malpractice suit against Wong on September 11, 1980. Defendant Lynn Eugene Cleveland filed a medical malpractice suit against Wong on September 28, 1980. The alleged acts of negligence claimed in both of these suits occurred prior to July 28, 1980, the effective date of the MoMedico policy.

On October 8, 1980, after it became aware of the two claims, MoMedico attempted cancellation of the policy *ab initio* and tendered Wong the return of his premiums and surcharge payments. MoMedico refused to provide Dr. Wong insurance coverage or a defense to the Jacobson and Cleveland claims. MoMedico, in May 1978, had filed a "Non-Admitted Carrier Declaration of Compliance" form with the Kansas commissioner of insurance. This form states, in substance, that MoMedico declares that its professional liability policies, wherever issued, shall be deemed to provide the insurance coverage required by K.S.A. 40-3402(a)(1), when the nonresident health care provider renders professional service as a health care provider in Kansas. It was stipulated by the parties that MoMedico never notified the Kansas insurance commissioner of either the issuance or cancellation of Dr. Wong's insurance policy.

Because MoMedico refused to provide Dr. Wong insurance coverage and a defense to the Jacobson and Cleveland claims, defendant Fletcher Bell, Commissioner of Insurance, as administrator of the Health Care Stabilization Fund, provided a defense to Dr. Wong in those cases under a reservation of rights. Defendant Bell, in his counterclaim against MoMedico, sought reimbursement for attorney fees and expenses and for the sum of $12,000 paid to Jacobson in settlement of his malpractice claim against Dr. Wong. At the time the judgment in this case was entered in district court, the Cleveland action against Dr. Wong was still pending.

As a basis for the cancellation of Dr. Wong's policy, MoMedico claimed that Dr. Wong misrepresented his place of residence, continued to practice medicine in Kansas after indicating that he would be concluding his Kansas practice, failed to inform plaintiff that claims were being made against him, and neglected to inform MoMedico that Wong had been insured by Western Casualty & Surety Company. Prior to cancellation of Dr. Wong's policy, MoMedico's manager conducted an investigation of Dr.

Wong. That investigation did not disclose any acts of wrongdoing whatsoever on the part of Dr. Wong nor disclose any facts justifying cancellation of the policy. Following this investigation, MoMedico decided to cancel Dr. Wong's policy from the date of issuance and, thereafter, instituted this declaratory judgment action. When the case came on for trial, the district court granted judgment in favor of all defendants on plaintiff's claims following MoMedico counsel's opening statement. This judgment was granted upon the motion of Dr. Wong's counsel for a "directed verdict or for judgment as a matter of law." The judge indicated that he had considered the stipulation of facts and exhibits referred to in those stipulations in reaching his decision.

Following the court's ruling that MoMedico was obligated to defend and indemnify Dr. Wong under the insurance policy issued on July 28, 1980, the court held an evidentiary hearing on the issues raised by the various defendants in their counterclaims. Following the hearing, the trial court made 32 findings of fact and conclusions of law. It would unduly prolong this opinion to set forth verbatim those 32 findings of the trial court. We will refer to specific findings of the trial court as we consider each point that is raised on the appeal. The trial court entered judgment in favor of defendants, and MoMedico appealed.

MoMedico's first point on the appeal is that the trial court erred in granting the defendant Wong's motion for a directed verdict following the opening statement by MoMedico's counsel and without affording MoMedico an opportunity to present evidence. We find this contention to be without merit. The motion made by Wong's counsel was not only a motion for a directed verdict but also a motion for judgment as a matter of law. The trial court properly interpreted the motion as a motion for summary judgment. We note that there was no objection as to the form of the motion made by plaintiff's counsel at the trial. Under all the circumstances, we hold that the trial court properly treated the motion as a motion for summary judgment.

We will now consider whether the trial court erred in sustaining the motion on that basis. The granting of a motion for summary judgment is provided for in Section (c) of K.S.A. 60-256 which provides in part as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

This court has held that a trial court has inherent power to summarily dispose of litigation *on its own motion* where there remains no genuine issue as to any material fact, and, giving the benefit of all reasonable inferences that may be drawn from the evidence, judgment must be for one of the parties as a matter of law. *Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 420 P.2d 1019 (1966). The trial court sustained the motion for summary judgment as a matter of law on November 1, 1982. At that time MoMedico's action for declaratory judgment had been on file since January 6, 1981. Discovery had been completed, a thorough pretrial conference had been held, and all of the basic facts had been developed. Under the circumstances, we cannot say that the trial court erred in sustaining Dr. Wong's motion for judgment as a matter of law.

MoMedico's second point on the appeal is that the trial court erred in granting the motion of all defendants for a finding that MoMedico was estopped to deny defendant Wong was a resident of the State of Missouri without first hearing the evidence which plaintiff desired to present at the hearing. We find no error in the ruling of the court. As noted above, the evidence was undisputed as to the information MoMedico agents had at the time the policy was issued. On this application form, Dr. Wong listed both a Kansas and Missouri address. At the time the policy was issued, MoMedico knew that Dr. Wong would render some professional care to persons in Kansas. The insurance policy included a ten percent (10%) surcharge to cover specifically Dr. Wong's practice in Kansas. MoMedico issued the policy knowing that Dr. Wong had two addresses, one in Kansas and one in Missouri. It knew that Dr. Wong was going to treat certain patients in Kansas and that defendant Wong's family still lived in Kansas. It was not until MoMedico learned of the medical malpractice claims of Cleveland and Jacobson that it decided to cancel the policy *ab initio.* There was simply no basis for a claim of misrepresentation on Dr. Wong's part after MoMedico issued its policy. Dr. Wong, in reliance on the MoMedico policy, continued his medical practice without attempting to obtain any other insurance coverage.

We hold that the trial court properly held that MoMedico was

equitably estopped on the issue of Dr. Wong's residence. The substance of MoMedico's position was that Dr. Wong had misrepresented his residence, and a policy would never have been issued to him had MoMedico known he lived in Kansas. It does not really matter where defendant Wong lived since MoMedico was aware that Dr. Wong actually practiced in both Missouri and Kansas. His actual legal place of residence does not change that fact. It is undisputed that Dr. Wong listed both Kansas and Missouri addresses on his application, and informed MoMedico that he would be finishing up with some patients in Kansas, which he did. Plaintiff charged Dr. Wong an additional premium to provide insurance coverage for his medical practice in Kansas. In view of these undisputed facts, there was no basis whatsoever for a claim of misrepresentation justifying the cancellation of the policy. The trial court did not err in so ruling on the motion for summary judgment.

In view of our holding that MoMedico had no reasonable basis for cancelling Dr. Wong's medical malpractice insurance, we do not deem it necessary to consider the point that the professional liability policy could not be cancelled, in any event, without giving the thirty-day notice required for cancellation of the policy provided for in K.S.A. 40-3402(a)(2).

MoMedico's fourth and fifth points will be considered together because they are related. Under these two points, MoMedico raised two issues for our consideration:

(1) The trial court erred in rewriting and changing Dr. Wong's policy from an occurrence policy to a combined occurrence/claims made policy; and

(2) If the policy is to be construed to provide claims made coverage, only the minimum stautory requirement of $100,000 per occurrence and the $300,000 annual aggregate should be read into the policy, rather than to provide insurance coverage in the amount of $1,000,000.

These issues require us to construe the provisions of K.S.A. 40-3402 which provides in part as follows:

"(a) A policy of professional liability insurance approved by the commissioner and issued by an insurer duly authorized to transact business in this state in which the limit of the insurer's liability is not less than one hundred thousand dollars ($100,000) per occurrence, subject to not less than a three hundred thousand dollar ($300,000) annual aggregate for all claims made during the policy period, shall be maintained in effect by each resident health care provider as a

condition to rendering professional service as a health care provider in this state, unless such health care provider is a self-insurer. Such policy shall provide as a minimum coverage for claims made during the term of the policy which were incurred during the term of such policy or during the prior term of a similar policy.

. . . . .

"(3) Any professional liability insurance policy issued, delivered or in effect in this state on and after the effective date of this act shall contain or be endorsed to provide basic coverage as required by subsection (a) of this section. Notwithstanding any omitted or inconsistent language, any contract of professional liability insurance shall be construed to obligate the insurer to meet all the mandatory requirements and obligations of this act.

"(b) Unless a nonresident health care provider is a self-insurer, such provider shall not render professional service as a health care provider in this state unless such provider maintains coverage in effect as prescribed by subsection (a) of this section, except such coverage may be provided by a non-admitted insurer who has filed the form required in paragraph (1) of subsection (b) of this section.

"(1) Every insurance company authorized to transact business in this state, that is authorized to issue professional liability insurance in any jurisdiction, shall file with the commissioner, as a condition of its continued transaction of business within this state, a form prescribed by the commissioner declaring that its professional liability insurance policies, wherever issued, shall be deemed to provide at least the insurance required by this subsection when the insured is rendering professional services as a nonresident health care provider in this state. Any non-admitted insurer may file such a form."

In support of its position, MoMedico makes the following contentions. It maintains that the sale of MoMedico's medical malpractice policy and binder to Dr. Wong was made in plaintiff's St. Louis office. It is stipulated that the insurance contract as written is an "occurrence" insurance policy. An "occurrence" is defined in the policy as an accident which results, during the policy period, in personal injury. Plaintiff points out that all alleged acts of negligence committed by Dr. Wong involving defendants Cleveland and Jacobson occurred before July 28, 1980, the effective date of the insurance policy. The policy *as written* thus provided no coverage for these two malpractice claims, because the occurrences did not take place during the term of the policy. Claims made coverage, on the other hand, provides coverage for claims made during the period of the policy, no matter when the act of medical malpractice occurred. MoMedico argues that, in entering judgment for the defendants, the district court rewrote the insurance policy to provide "claims made" coverage as well as "occurrence" coverage. MoMedico contends, in substance, that the contract of insurance was exe-

cuted in Missouri and was valid as issued under the laws of that state. The Kansas Health Care Provider Insurance Availability Act does not give a *carte blanche* authority to a Kansas court to rewrite a Missouri contract. MoMedico argues that, since Dr. Wong was in fact a Kansas resident, the declaration of compliance filed by MoMedico with the Kansas insurance department does not apply, and, therefore, the health care provider act has no application and cannot change the policy as written.

Dr. Wong, in response, maintains that the district court correctly interpreted the Kansas Health Care Provider Insurance Availability Act. He points out that on May 11, 1978, MoMedico filed its "Non-Admitted Carrier Declaration of Compliance" form with the Kansas commissioner of insurance which provided:

"Pursuant to the provisions of K.S.A. 1976 Supp. 40-3402(b)(1), the Missouri Medical Insurance Company of 100 North Broadway, St. Louis, Missouri, 63102, hereby declares that its professional liability policies wherever issued shall be deemed to provide the insurance required by K.S.A. 1976 Supp. 40-3402(a)(1), when such non-resident health care provider renders professional service as a health care provider in the state of Kansas.

"The company understands that this declaration is filed voluntarily to provide its policyholders rendering health care services within the state of Kansas with coverage required by Kansas law."

Dr. Wong contends that, pursuant to this declaration and the provisions of K.S.A. 40-3402(*b*)(1), MoMedico was a non-admitted carrier which agreed that it would provide the coverage required by Kansas law whenever a health care provider which they insured rendered care in Kansas. Under this provision, the trial court was correct in ruling that the health carrier must comply with the act. Since K.S.A. 40-3402(*a*) provides that coverage must be provided on a "claims made" basis, MoMedico's policy issued to Dr. Wong must be construed so as to provide "claims made" coverage for Dr. Wong for any services rendered by Dr. Wong in the state of Kansas. Dr. Wong relies upon *Canal Insurance Co. v. Sinclair*, 208 Kan. 753, 494 P.2d 1197 (1972), which holds that where a policy of insurance is issued to an insured in compliance with the requirement of a statute, the pertinent provisions of the statute must be read into the policy, and no provisions of the policy in contravention of the statute can be given effect. The other defendants, in their briefs, agree with the position taken by Dr. Wong in his brief. In determining the

issue, the trial court made the following findings of fact and conclusions of law:

"1. Missouri Medical Insurance Company filed with the Kansas Insurance Department a non-admitted carrier declaration of compliance form pursuant to K.S.A. 40-3402(b)(1), which was on file and in effect all relevant times hereto.

. . . .

"3. By virtue of filing the declaration of compliance form with the Kansas Insurance Department, Missouri Medical Insurance Company had declared that the policy issued to Dr. Wong would provide the medical malpractice coverage required to be maintained by health care providers in the State of Kansas pursuant to K.S.A. 40-3402(a), when Dr. Wong was practicing in the State of Kansas as a non-resident health care provider.

"4. That K.S.A. 40-3402 requires Missouri Medical's coverage to operate on *at least* a claims made basis and provide coverage for claims made during the term of the policy which were incurred during the term of that policy or during the term of a prior professional liability policy issued pursuant to the Act, as to Dr. Wong's Kansas practice both prior to and subsequent to issuance of the policy.

"5. The engafting of the provisions of the Act upon the policy does not affect the extension of occurrence based coverage to Dr. Wong from July 28 to termination of the policy; therefore the policy also provides Dr. Wong with coverage for any act of professional negligence which occurred in either the State of Missouri or the State of Kansas from on or after July 28, 1980, to the date of termination of the policy.

"6. The coverage to be provided as set forth in Paragraphs 4 and 5 above was to be provided in exchange for the payment, by Dr. Wong, of the premium amount set forth in the declarations of the policy.

"7. The maintenance of professional liability insurance by a health care provider rendering professional services in the State of Kansas is compulsory and must be maintained by each such provider as a condition of rendering services in the State of Kansas.

"8. Because such insurance is compulsory, the terms of the Kansas Health Care Provider Insurance Availability Act (K.S.A. 40-3401, *et seq.*) became a part of any contract of professional liability insurance which insures a health care provider practicing in the State of Kansas, and to the extent that the provisions of the policy contradict the terms of the Act, the terms of the Act are controlling with respect to the Kansas practice.

"9. Therefore, the policy sold to Dr. Wong by Missouri Medical Insurance Company on July 28, 1980, operates on both an occurrence and a claims made basis as to Dr. Wong's Kansas practice and on an occurrence basis as to his Missouri practice.

"10. The claims of Lynn Eugene Cleveland and Jack Jacobson were claims made during the term of the Missouri Medical Insurance Company policy which were incurred during the terms of a prior professional liability insurance policy."

We agree with the trial court and its findings of fact and conclusions of law as set forth above. Under all the circumstances, Dr. Wong's policy must be construed to include the

statutory mandated coverage as provided by K.S.A. 40-3402(*a*). This result is required by our decision in *Canal Insurance Co. v. Sinclair.* Under the undisputed factual circumstances and the law as set forth above, we hold that Dr. Wong's MoMedico policy must be construed to provide coverage for claims made against Dr. Wong during the policy period even though the alleged act of medical malpractice occurred during a prior term of a similar policy.

We now consider the question as to the *amount* of "claims made" coverage which Dr. Wong is entitled to have included in the policy because of the statutory requirements. It is the position of MoMedico that only the *minimum statutory requirement* of $100,000 per occurrence and the $300,000 aggregate, as provided in K.S.A. 40-3402(*a*), is to be read into the policy to make it conform with the requirements of the Kansas statute. The district court rejected this contention and made findings and conclusions of law as follows:

"11. The stated limits of the Missouri Medical Insurance policy are $1,000,000.00 per occurrence subject to an aggregate of $1,000,000.00.

"12. The stated policy limits apply to the claims of Cleveland and Jacobson on a claims made basis inasmuch as the stated limits, while in excess of the minimum limits required by the law, are not in contravention of any provision of the Act.

. . . .

"15. The coverage provided by the policy issued by Missouri Medical, as supplemented by the Health Care Provider Insurance Availability Act, is primary to the coverage provided to Dr. Wong by the Health Care Stabilization Fund, and such coverage is primary to the extent of the stated limits of the policy as to any claims made or incurred during the policy period."

Thus the court, having ruled that Dr. Wong's MoMedico policy is to be construed as a claims made policy, found that the policy limits of $1,000,000 applied to cover both the Cleveland and Jacobson claims. We agree with the defendants that this ruling is correct. K.S.A. 40-3402(*a*) states only that the liability limits must be not less than $100,000/$300,000. Limits in excess of the minimum are clearly contemplated by K.S.A. 40-3408. K.S.A. 40-3408 provides, in substance, that if any liability insurance in excess of such amounts ($100,000/$300,000) is applicable to any claim or would be applicable i the absence of this act, any payments from the Health Care Stabilization Fund shall be *excess* over such amounts paid, payable, or that would have been payable in the absence of this act. Here, there is no question that

the MoMedico policy is applicable and must be read to provide claims made coverage. There is no question that the policy provides limits of $1,000,000. MoMedico sold the policy with the intent of providing $1,000,000 worth of coverage for Kansas claims and charged Dr. Wong a premium for $1,000,000 worth of coverage. In K.S.A. 40-3408, the legislature clearly set forth the relationship between the Fund and primary coverage with limits in excess of the minimum required by law. The statute contemplates that the liability of the Fund shall be in excess of the coverage provided in the primary policy. We hold that the trial court did not err in concluding that the policy limits of $1,000,000 must be applied on a claims made basis to each of the claims made by Cleveland and Jacobson.

The next point raised by MoMedico on the appeal is that the trial court erred in awarding Dr. Wong attorney fees incurred by him in defending against MoMedico's declaratory judgment action. In this regard, the court made the following findings of fact and conclusions of law:

"24. The provisions of K.S.A. 40-256 are applicable to declaratory judgment actions such as this.

"25. At the time it issued its policy of professional liability insurance to defendant Wong, plaintiff knew that defendant Wong would be practicing medicine in the State of Kansas; that defendant Wong had cancelled the professional liability insurance which he had previously carried for his Kansas practice; and that Kansas law required that Dr. Wong carry professional liability insurance as a condition to his practice of medicine in Kansas.

"26. At the time plaintiff issued its policy of professional liability insurance to defendant Wong, plaintiff knew or is deemed to have known that its policy provided at a minimum coverage for the claims made during the term of the policy which were incurred during the term of the policy or during the term of a prior professional liability policy issued pursuant to the Kansas Health Care Provider's Insurance Availability Act (K.S.A. 40-3401, *et seq.*).

"27. Plaintiff admits, through the testimony of Mrs. Pierce, that it would have provided coverage for medical malpractice claims resulting from any occurrences that happened between July 28, 1980 and August 8, 1980.

"28. Plaintiff, without just cause or excuse, wrongfully attempted cancellation of the policy of professional liability insurance issued by it to defendant Wong, wrongfully refused to acknowledge coverage for the claims of defendants Cleveland and Jacobson and has wrongfully refused to provide defendant Wong with a defense to such claims. The filing of this declaratory judgment action by plaintiff was likewise without just cause or excuse.

"29. Additionally, plaintiff had a contractual duty to provide a defense to its insured, defendant Wong, under the terms of its policy, and that includes this declaratory judgment action, aside from any right defendant Wong has to an allowance of fees pursuant to K.S.A. 40-256.

"30. As a result of plaintiff's unjustified refusal to acknowledge coverage and provide a defense to the claims of defendants Cleveland and Jacobson, Wong was compelled to employ independent counsel and has incurred attorney fees and expenses in establishing coverage and plaintiff's duty to defend. Defendant Wong has also incurred attorney fees, expenses and costs in connection with his participation in this action. Defendant Wong is entitled to judgment against plaintiff for all such attorney fees, expenses and costs."

We agree with the trial court in its determination of this issue. K.S.A. 40-256 provides in part as follows:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appears from the evidence that such company, . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . ."

The award of attorney fees in this case is controlled by our decision in *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 151, 519 P.2d 737 (1974). That case involved a declaratory judgment action brought by Upland Mutual to determine whether or not it had coverage and a duty to defend under a homeowner's insurance policy. In Syllabus ¶ 2 the rule is stated that where an insurance company denies coverage and the duty to defend under a homeowner's liability insurance policy and brings a declaratory judgment action against the insured to determine that issue, the insured is entitled to recover attorney fees and expenses incurred in defense of the declaratory judgment action if it is determined that there is coverage and a duty to defend. Although the court recognized a decided split of authority on the subject, it adopted the rule set forth above. In the case now before us, MoMedico contracted to provide Dr. Wong insurance coverage and a defense to any malpractice claims. As determined under prior points, MoMedico had no reasonable basis to deny coverage to Dr. Wong, because, under its declaration of compliance form, it agreed to provide the medical malpractice insurance required by K.S.A. 40-3402(*a*)(1). The trial court found that MoMedico, without just cause or excuse, wrongfully attempted cancellation, wrongfully refused to acknowledge insurance coverage, and wrongfully refused to furnish Wong with a defense to the Cleveland and Jacobson claims. This finding of fact by the trial court is supported in the

record by substantial, competent evidence and we have no right to disturb that finding on appeal unless an abuse of discretion is shown. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 598-99, 528 P.2d 134 (1974). We find no error in the district court's award to Dr. Wong of attorney fees incurred in defense of MoMedico's declaratory judgment action.

MoMedico also raises a point that the trial court erred in awarding certain elements of damage to Dr. Wong on his counterclaim for damages resulting from MoMedico's wrongful attempt to cancel his insurance policy. In this regard the trial court made the following findings and conclusions:

"25. At the time it issued its policy of professional liability insurance to defendant Wong, plaintiff knew that defendant Wong would be practicing medicine in the State of Kansas; that defendant Wong had cancelled the professional liability insurance which he had previously carried for his Kansas practice; and that Kansas law required that Dr. Wong carry professional liability insurance as a condition to his practice of medicine in Kansas.

. . . .

"29. Additionally, plaintiff had a contractual duty to provide a defense to its insured, defendant Wong, under the terms of its policy, and that includes this declaratory judgment action, aside from any right defendant Wong has to an allowance of fees pursuant to K.S.A. 40-256.

. . . .

"32. As a result of plaintiff's breach of its contract of insurance, defendant Wong has suffered additional consequential damages in the sum of $6,800.00, representing lost income for medical services, resulting from plaintiff's wrongful cancellation of its policy, and in the sum of $1,510.00, representing the difference between the premium cost agreed upon with the plaintiff and the premium cost for coverage with another carrier after plaintiff's wrongful cancellation."

MoMedico objected to the award to Dr. Wong of the $6,800 representing lost income because he was not able to perform certain scheduled surgery because of MoMedico's wrongful cancellation of his insurance policy, and the sum of $1,510 representing the increase in the premium because Dr. Wong had to purchase another insurance policy. The sole basis of MoMedico's objection is that these two elements of damage were established by hearsay testimony. We do not agree. There was testimony in the record that Dr. Wong's privilege to provide certain medical services was suspended as a result of MoMedico's wrongful cancellation of Dr. Wong's insurance policy and that, as a result, Dr. Wong declined to perform scheduled surgery until he could obtain another insurance policy at a higher price. The evidence was sufficient to prove these elements of damages.

As its next point, MoMedico contends that the trial court erred in awarding attorney fees to the non-insured defendants Cleveland and Fletcher Bell, commissioner of insurance and administrator of the Health Care Stabilization Fund. As to defendant Cleveland, the trial court awarded him attorney fees and costs incurred in defense of the declaratory judgment action apparently on the basis of K.S.A. 40-256. MoMedico complains that K.S.A. 40-256 is not applicable in this case, because Cleveland was not a named insured. We have concluded that the trial court erred in awarding attorney fees to defendant Cleveland on the basis of K.S.A. 40-256. Clearly, MoMedico had no contractual relationship with defendant Cleveland. We have held on a number of occasions that, in order to recover attorney fees against the losing party, there must be a clear and specific statute so providing. *Walker v. Davis Van & Storage Co.*, 198 Kan. 452, 454, 424 P.2d 473 (1967). Since there was no statutory basis for defendant Cleveland, a tort claimant against the insured, to recover attorney fees against MoMedico, we hold that the award of the district court awarding Cleveland attorney fees was in error.

As to the rights of Fletcher Bell, Commissioner of Insurance and administrator of the Health Care Stabilization Fund, to recover attorney fees and the settlement monies paid to Jacobson, the trial court made the following findings of fact and conclusions of law:

"16. Missouri Medical Insurance Company had a primary duty to defend the malpractice claims of Lynn Eugene Cleveland and Jack Jacobson against Dr. Wong, and to provide coverage for such claims.

"17. The Health Care Stabilization Fund, pursuant to K.S.A. 40-3409, had no primary obligation to defend these claims against Dr. Wong.

"18. To protect its interest arising from a possible excess exposure, the Health Care Stabilization Fund was forced to defend these claims because of the refusal of Missouri Medical Insurance Company to honor its primary obligation; therefore, the Health Care Stabilization Fund is entitled to 100% reimbursement of all attorney fees paid to defend the malpractice claim of Jack Jacobson, and to reimbursement of 100% of all attorney fees paid to defend the malpractice claim of Lynn Eugene Cleveland against Dr. Wong.

"19. The Health Care Stabilization Fund also paid $12,000.00 in settlement of the malpractice claim of Jack Jacobson, after making demand upon Missouri Medical Insurance Company to settle said claim and receiving Missouri Medical's refusal to do so.

"20. Therefore, the Health Care Stabilization Fund is entitled to 100% reimbursement of the amount paid to settle the claim of Jack Jacobson, which was a

fair, just and reasonable settlement, approved by the District Court of Sedgwick County, Kansas, in the amount of $12,000.00.

"21. The attorney fees incurred by the Fund in providing a defense of the claim of Lynn Eugene Cleveland against Dr. Wong are in the amount of $17,739.36. The attorney fees and expenses incurred by the Fund in defending the claim of Jack Jacobson against Dr. Wong are in the amount of $11,264.77. The plaintiff having so stipulated, the Court finds these attorney fees to be reasonable and due and owing to the Health Care Stabilization Fund. The Court further finds that Missouri Medical Insurance Company is responsible for all such fees hereafter incurred in the defense of the Cleveland claim."

We hold that the trial court did not err in awarding attorney fees incurred by the Fund in defending the Cleveland and Jacobson cases and for the amount paid in settlement of the Jacobson case. In this case, MoMedico had the primary duty to defend the Cleveland and Jacobson claims. The Fund, being secondarily liable following the refusal of MoMedico to provide a defense of the two cases and to pay a reasonable settlement, was forced to pay $12,000 to Jacobson to protect its interest. Under the statute, the Fund has no duty to defend a health care provider *where primary insurance coverage is in effect.* K.S.A. 40-3409(*b*) states, in substance, that a medical malpractice action shall be defended *by the insurer or self-insurer.* While this section grants to the insurance commissioner the authority to employ independent counsel to represent the interests of the Fund, there is no statutory provision that requires the Fund to provide a defense to the health care provider where there is primary insurance coverage.

*American Fidelity Ins. Co. v. Employers Mut. Cas. Co.,* 3 Kan. App. 2d 245, 593 P.2d 14 (1979), discusses in some depth the duty to defend an insured as between a primary and secondary insurer. The opinion places the primary duty to defend the case on the insurer which has the primary insurance coverage. It also recognizes the subrogation rights of a secondary insurer which has fulfilled an obligation to defend owed by the primary insurer. In this regard, we note *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. 373, 429 P.2d 931 (1967), which holds that under both equitable principles and subrogation rights as contained in the policy, a secondary insurer who is compelled to pay a loss because of a refusal or failure, after demand, of the primary insurer to pay such loss, has the right to recover the amount paid from the insurer primarily liable to the extent of the latter's policy limits. That case holds, however, that

where a secondary insurer has a contractual duty with its insured to defend a lawsuit instituted by an injured party, the insurer has no right to recover from the primary insurer its attorney fees and expenses in making such a defense. In our judgment, the factual circumstances in *Maryland Cas. Co.* are distinguishable from the factual circumstances in the case now before us. Here the Fund had no *contractual* relationship with the insured, Dr. Wong. The obligation to defend a claim is not placed upon the Fund in cases where the Fund's liability is secondary or excess only. Under the circumstances, we hold that the trial court did not err in entering judgment requiring MoMedico to reimburse the Fund for its attorney fees incurred in defending the Cleveland and Jacobson cases and for the amount of $12,000 expended in settlement of Jacobson's claim.

Defendant Dr. Wong filed a cross-appeal contending that the trial court erred in disallowing Dr. Wong's claim for *punitive damages* and in disallowing a portion of defendant Wong's claimed attorney fees. We have concluded from the record that the trial court correctly ruled in denying these elements of damage. The trial court found correctly that there was no independent tort involved in the case which could justify an award of punitive damages to Dr. Wong. We also hold, from our review of the record, that the trial court did not err in denying a portion of defendant Wong's claim for attorney fees, since the nature of the legal services performed was not adequately shown by Dr. Wong at the hearing.

For the reasons set forth in the opinion, the judgment of the district court is affirmed in part and reversed in part.

HERD, J., dissenting and concurring: It is undisputed that the professional liability insurance policy purchased by Dr. David Wong from Missouri Medical Insurance Company does not cover the acts of malpractice involved here. That insurance policy covers only acts which occurred during the policy period. The effective date of the insurance policy is July 28, 1980. Dr. Wong's malpractice at issue occurred prior to that date. It thus results, though unintentionally, that the sole effect of the insurance contract is the triggering of the statute from which MoMedico's liability flows. That statute, K.S.A. 40-3402(a), requires all Kansas professional liability insurers to provide "not less than one

hundred thousand ($100,000) per occurrence, subject to not less than a three hundred thousand ($300,000) annual aggregate for all claims made during the policy period," covering that period and the prior term of a similar policy. Thus it is clear MoMedico's liability arises exclusively from the statute and not from its contract of insurance with Dr. Wong.

The majority opinion correctly holds K.S.A. 40-3402(a) imposes an obligation on MoMedico to provide liability coverage on a claims made basis as a condition precedent to its doing business in Kansas even though such is not a part of its contract with Dr. Wong. But, the majority opinion, after invoking the statute, mistakenly abandons the statutory source of the insurance coverage and selectively engrafts onto the statute the amount of insurance borrowed from the inapplicable insurance contract. Such judicial craftsmanship is improper for several reasons. Selective enforcement of the provisions of a statute, absent ambiguity, breaches established rules of law and is tantamount to amending a statute by the judiciary in violation of the separation of powers. The majority's action also sets an improper precedent for statutory and contract construction which will affect a much broader area of the law than insurance contracts. Finally, the majority's decision is grossly unjust. MoMedico issued its liability policy to Dr. Wong restricting its coverage to occurrences within the policy period. The premium for that policy was small because the risk was limited. Had MoMedico contemplated being required to furnish liability insurance coverage for all claims made under its policy against Dr. Wong for malpractice occurring during the prior policy period, it would not have contracted thusly with Dr. Wong. It was known St. Paul Fire & Marine Insurance Company did not like the risk posed by Dr. Wong and had cancelled its policy. MoMedico's liability here did not arise by choice but by operation of law. Where the law imposes the liability, the limit of that liability imposed by statute should also be applicable.

In drawing these conclusions I am aware of the tremendous damages resulting from Dr. Wong's malpractice. But, I am also mindful MoMedico is not the wrongdoer and is only responsible for the liability it agreed to assume or that is imposed by law. Obviously for a premium of $73 it did not agree to take on the responsibility for Dr. Wong's past wrongdoing. The source of

MoMedico's obligation is the statute which imposed liability of $100,000 per occurrence on it. Here there are two occurrences; one has been settled for $12,000 for which MoMedico is liable plus attorney fees. MoMedico's liability for the other occurrence cannot exceed $100,000 plus attorney fees. I therefore dissent as to the amount of insurance and concur in all else.

McFARLAND, J., joins the foregoing dissenting and concurring opinion.