## LINCOLN–WAY FEDERAL SAVINGS BANK, Plaintiff,

v.

## EMPLOYERS INSURANCE OF WAUSAU, Defendant.

### No. 87 C 6682.

United States District Court,
N.D. Illinois, E.D.

Aug. 3, 1989.

David S. Finch, Steven H. Hoeft, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Louis C. Roberts, Rocco J. Spagna, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Lincoln–Way Federal Savings Bank ("Lincoln–Way") filed a declaratory judgment action, seeking to recover on a financial institution special bond against defendant Employers Insurance of Wausau ("Employers") for losses sustained when Lincoln–Way's mortgage-backed securities were allegedly lost or stolen by an investment firm of Bevill, Bresler and Schulman, Inc. ("BBS") and its affiliate, Bevill, Bresler & Schulman Asset Management Corp. ("AMC"). Employers presently moves for partial summary judgment and Lincoln–Way brings a cross-motion to strike certain affirmative defenses. At oral argument, the parties narrowed the issues to be resolved by the court. This memorandum opinion and order addresses those issues.

### I. FACTS

On February 6, 1985, Lincoln–Way entered into repurchase and reverse repurchase transactions with BBS. Lincoln–Way executed documents indicating a "sale" of mortgage participation certificate with a market value of $3,998,000.00 to BBS, and an agreement by BBS to "resell" the certificate to Lincoln–Way at the end of ninety days at the price of $3,770,000.00 plus an amount of interest. At the same time, Lincoln–Way entered into a repurchase transaction with BBS, whereby Lincoln–Way agreed to "buy" four mortgage-backed securities ("GNMAs") at the end of the ninety days at the same price plus interest.

On April 8, 1985, BBS filed for protection under Chapter 11 of the United States Bankruptcy Code. At that time, BBS advised Lincoln–Way that both its mortgage participation certificate and the GNMAs for which it had been "exchanged" were "gone." Lincoln–Way claims its loss was due to fraud on the part of BBS.

Employers issued a financial institution special bond to Lincoln–Way, effective March 1, 1985. Lincoln–Way has made claims for coverage under two provisions of the bond as a result of its losses. The first provision provides coverage for losses sustained as a result of incidents of fraud or theft that occur on the insured's premises or on the premises where the subject property is lodged.[1] The second provision provides for recovery of losses sustained as a result of the insured's having purchased, sold, received, or delivered any security, document or other instrument which proves lost or stolen.[2]

Employers has denied Lincoln–Way's claims and has raised three defenses: (1) Lincoln–Way's claim is excluded under the "trading" loss exclusion of the bond;[3] (2) the loss is excluded under the "loan" exclusion of the bond;[4] and (3) the bond does not cover Lincoln–Way's loss because the loss was sustained on February 6, 1985, prior to the effective date of the bond.

Lincoln–Way filed its complaint on July 29, 1987. On October 1, 1987, Employers filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. On December 7, 1987, Judge Shadur denied Employers' motion without prejudice and suggested to the parties that an issue-narrowing motion be brought under Fed.R.Civ.P. 16.

Employers then filed a motion for partial summary judgment pursuant to Fed.R. Civ.P. 56. Lincoln–Way has filed a cross-motion under Fed.R.Civ.P. 16 to strike Employers' affirmative defenses.

The parties presented oral arguments to this court on December 21, 1988. At that time, the attorneys for the parties indicated that the court could resolve the following issues as a matter of law:

1) whether the loss-sustained rider is prohibited by the Federal Home Loan Bank regulations.

2) whether the trading loss or loan loss exclusions run afoul of the Federal Home Loan Bank regulations.

## II. LOSS–SUSTAINED RIDER

■ Lincoln–Way argues that the loss-sustained endorsement to Employers' financial institution special bond does not comply with the requirements of the Federal Home Loan Bank Board ("FHLBB"). Specifically, Lincoln–Way points to 12

---

1. ON PREMISES
   A. Loss of:
   (2) Property (occurring with or without negligence or violence) resulting directly from theft, false pretenses, or common-law or statutory larceny, committed by a person present in an office or on the premises of the insured
   . . .

2. ALL RISK FORGERY
   Loss resulting directly from the Insured:
   (a) having in good faith and in the usual course of business, whether . . . for the account of others, either gratuitously or otherwise, purchased or otherwise acquired accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability or otherwise acted upon any security, document, or other written instrument which proves to have been forged, altered, raised, counterfeited, lost or stolen . . .

3. Exclusion (n) of the bond provides that the bond does not cover:
   loss resulting directly or indirectly from trading with or without the knowledge of the

Insured, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious, notwithstanding any act or omission on the part of any employee in connection with any account related to such trading, indebtedness or balance, except to the extent that coverage for such loss is afforded under Coverage 11 or 12.

4. Exclusion (e) of the bond provides that the bond does cover:
   Loss resulting directly or indirectly from the complete or partial non-payment of or default upon:
   (1) any loan, or any transaction in the nature of a loan, or extension of credit, whether or not involving the insured as lender or as borrower . . . whether the insured's participation was procured in good faith or through trick, artifice, fraud or false pretense, except to the extent that coverage for such loss is afforded under Coverage 1, 11, or 12.

C.F.R. § 563.19 of the FHLBB regulations which state:

> Each insured institution shall maintain bond coverage ...in the form known as Standard Form No. 22 or its equivalent ...

Because Standard Form No. 22 provides coverage on losses discovered within a specific policy period, Lincoln–Way contends a fidelity bond will comply with 12 C.F.R. § 563.19 only if it is a "discovery" policy rather than a loss-sustained policy. Lincoln–Way maintains that since the loss-sustained endorsement at issue is not a "discovery" policy it should be deleted or construed favorably in its favor to include the "discovery" coverage set forth in Form No. 22.

The form of Employers' financial institution special bond is considered by the FHLLB to be the equivalent of Standard Form No. 22. *See* Affidavit of David Feye at para. 6. The issue, then, is whether the use of the loss-sustained endorsement to this form complies with 12 C.F.R. § 563.19.

We find that the use of the loss-sustained endorsement complies with 12 C.F.R. § 563.19. The regulation expressly provides for the addition of riders to Standard Form No. 22: "[T]he institutions' Board of Directors must specifically approve any riders to Standard Form No. 22." *See* 12 C.F.R. § 563.19. Clearly, the FHLBB contemplated situations in which a rider would be necessary in order for an institution to obtain coverage. Furthermore, it is not unusual for a bond issued to a savings and loan institution to contain a loss-sustained endorsement. *See* Feye Affidavit at para. 3.

Lincoln–Way cites a number of cases for the proposition that when a bond conflicts with coverage mandated in a statute, it must be resolved in favor of the statutory provision. *See, e.g. Missouri Medical Insurance Co. v. Wong, M.D.,* 234 Kan. 811, 676 P.2d 113 (1984); *Konrad v. Hartford Accident & Indemnity Co.,* 11 Ill.App.2d 503, 137 N.E.2d 855 (1956); *Hack v. American Surety Co.,* 96 F.2d 939 (7th Cir.1938). However, these cases are distinguishable. In each of the cited cases, the statute in-

volved specifically mandated coverage. Here, 12 C.F.R. § 563.19 does not mandate that all fidelity coverage be provided on a discovery basis. Rather, the regulation provides for a basic form of coverage which it expressly recognizes that the terms of the coverage could be modified. The loss-sustained endorsement issued by Employers does not conflict with FHLBB regulations.

We, therefore, find that the loss-sustained endorsement to Employers' financial institution special bond complies with FHLBB regulations.

### III. TRADING LOSS AND LOAN LOSS EXCLUSIONS

■ Lincoln–Way also contends that the trading loss and loan loss exclusions contravenes federal law. In support of its argument, Lincoln–Way cites the case *Index Fund, Inc. v. Insurance Co. of North America,* 580 F.2d 1158 (2d Cir.1978). In *Index Fund,* the insured, an investment company whose principal occupation was trading, was required by the Securities and Exchange Commission to obtain a fidelity bond against losses from larceny and embezzlement by its officers who had access to funds or securities. The bond it obtained contained a "trading exclusion." The investment company made a claim under the bond for losses sustained when one of its employees was bribed by outsiders to purchase securities at manipulated prices. In refusing to give effect to the trading exclusion, the court stated: "[w]e have no doubt that in requiring a bond to provide coverage against losses from 'larceny and embezzlement' by an officer of a registered investment company Congress intended such bonds to cover [this loss]." 580 F.2d at 1163.

In *Index Fund,* the SEC specifically required that the insured have bond coverage. Here, unlike *Index Fund,* Standard Form No. 22 contains both the trading and loan exclusions at issue in this case. This form is expressly approved by the FHLBB under 12 C.F.R. § 563.19. Thus, these exclusions do not run afoul of the FHLBB regulations.

## IV. CONCLUSION

For the reasons stated above, the court finds that the use of the loss-sustained endorsement in this case is not prohibited by 12 C.F.R. § 563.19 of the FHLBB regulations. Nor does the trading loss or loan loss exclusions found in the bond run afoul of the FHLBB regulations. Thus, as to these issues, Employers motion for partial summary judgment is granted and Lincoln-Way's cross-motion to strike certain affirmative defenses is denied.