**Rebecca K. STAUFFER, Plaintiff,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**No. 97–4202–RDR.**

United States District Court,
D. Kansas.

Nov. 3, 1999.

Grant M. Glenn, R. Patrick Riordan, Woner, Glenn, Reeder & Girard, Topeka, KS, for Rebecca K. Stauffer, plaintiff.

Corlin J. Pratt, Gilbert L. Guthrie, Grace, Unruh & Pratt, L.C., Wichita, KS, for Jackson National Life Insurance Company, defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon long-pending cross-motions for summary

judgment. Plaintiff has filed a motion for partial summary judgment; defendant has filed a motion for summary judgment. This is an action to recover the proceeds of a life insurance policy purchased by plaintiff's husband, Darrell Stauffer. Plaintiff's husband died by reason of suicide. The issue raised by the instant motions is whether the cause of death limits the recovery to the premiums paid up to the time of death. The answer requires determining the start of the policy's two-year period during which payment in case of suicide was limited to premiums paid.

The material facts in this case are undisputed. On December 6, 1993, Darrell Stauffer signed an application to purchase a $250,000 life insurance policy (# 0022891280) from Jackson National Life Insurance Company, the defendant herein. The day before, December 5, 1993, Darrell Stauffer delivered a check in the amount of the quoted premium ($990.00) to defendant. Defendant cashed the check on December 9, 1993. The policy application listed three alternatives for the policy date: 1) date issued; 2) to save insurance age; and 3) other. On the application for the policy in question, "other" was marked and defendant's insurance agent wrote "per receipt" next to "other."

"Receipt" refers to an interim insurance receipt which was issued to Darrell Stauffer on December 5, 1993. The receipt states in part:

## INTERIM INSURANCE RECEIPT

Any reference in this Interim Insurance Receipt to a policy or an amount applied for refers to the policy and amount applied for on the application to which this Interim Insurance Receipt was originally attached and bears the same number.

### WHEN COVERAGE BEGINS

This receipt provides insurance coverage in the amount described in the LIMITS OF COVERAGE section if a check or draft for the first full premium, for the plan and mode applied for, is submitted with the application to which this Interim Insurance Receipt was attached and the check or draft is honored for payment.

### EFFECTIVE DATE

The EFFECTIVE DATE of the Interim Insurance for each Proposed Insured shall be the date of this receipt.

### LIMITS OF COVERAGE—$25,000

Interim Insurance based on this receipt, and all other receipts issued by the Company covering the life of any Proposed Insured, shall not exceed $25,000 or the amount applied for, WHICHEVER IS LESS.... No Interim Insurance shall be payable if a Proposed Insured dies by suicide.

### DUTIES OF THE PROPOSED INSURED(S)

If the health of any Proposed Insured, or any answers or statements in the application or in any medical examination, report or application supplement changes prior to the delivery of the policy; THE PROPOSED INSURED MUST SO INFORM THE COMPANY IN WRITING. The Company will then determine whether to issue a policy ......

### WHEN COVERAGE TERMINATES

Interim insurance shall terminate automatically on the earliest of:

1. The date the policy, as applied for, goes into force, which is the date the policy is delivered and any additional premium paid; or

2. When a Proposed Insured refused to accept delivery of a policy which has been issued as applied for.

THIS RECEIPT IS NOT A BINDER....

On December 27, 1993, defendant sent Darrell Stauffer a letter stating that it could not issue the policy applied for except at a greater premium than initially quoted by its agent. On December 30, 1993, Darrell Stauffer paid the additional premium and defendant delivered a policy and other documents to Stauffer.

Page one of the policy states that the policy date is December 28, 1993 and the issue date is December 28, 1993. Page three of the policy states that it is not contestable by defendant after two years from the issue date. Page three also states that in the event of suicide within two years of the issue date, the amount payable by defendant will be equal to the premiums paid.

Plaintiff is the beneficiary of the policy. Defendant died by suicide on December 13, 1995—more than two years after the policy was applied for and a premium was paid; but less than two years after the additional premium was paid and the policy was delivered to Darrell Stauffer.

To reiterate, the primary issue in this case is when the suicide and contestability provisions of the policy began to run—at the time Darrell Stauffer completed his application (December 6, 1993), or at the "issue date" listed on the first page of the policy (December 28, 1993).

Plaintiff contends that K.S.A. 40–420(2) controls this issue regardless of the language of the policy. This statute requires that life insurance policies contain a provision which states that the policy "shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date." Plaintiff argues that under this statute the two-year period runs from the date of application and premium receipt rather than the issue date. Plaintiff also cites K.S.A. 40–451(a) in support of her motion. This section states that a life insurance policy is in effect when an application and an initial premium have been received until the application has been turned down in writing and the unearned premium returned.

Alternatively, plaintiff asserts that the conflict between the Kansas statutes and the policy language creates an ambiguity which must be read in favor of plaintiff.

Defendant claims that two policies were purchased by Darrell Stauffer. According to defendant, the initial application purchased an interim policy which was terminated after the policy which plaintiff is suing upon was issued and delivered. The latter policy clearly provides that the issue date (December 28, 1993) starts the running of the two-year period during which payments in case of suicide are limited to premiums paid.

Defendant further asserts that it rejected Darrell Stauffer's initial application by making a counter-offer, i.e., the coverage requested in the application in return for a higher premium. Therefore, according to defendant, the policy at issue was not in effect until Stauffer accepted the counter-offer through the payment of the higher premium. Defendant contends that this interpretation of events is consistent with the Kansas statutes cited by plaintiff.

*Kansas statutes*

K.S.A. 40–420 provides in part:

No life insurance company authorized to transact the business of insurance in this state shall issue or deliver in this state any policy of life insurance other than industrial insurance, annuities and pure endowments with or without return of premiums or of premiums and interest unless the same shall contain in substance the following provisions:

. . . .

(2) A provision that, except as otherwise expressly provided by law, the policy together with the application, if a copy thereof be endorsed upon or attached to the policy, shall constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date . . .

K.S.A. 40–451 provides in part:

(a) When an application for an individual life insurance policy and an initial premium therefor has been received by an insurance company or agent acting on behalf of such company, the coverage for which application is made shall, subject to the limitations in subsection (b), be deemed to be temporarily in effect until the insurance company or agent has, in the event of an adverse underwriting decision . . . notified in writing the applicant of such adverse underwriting decision and returned any unearned premium in accordance with K.S.A. 40–2112 and amendments thereto.

(b) When an application for an individual life insurance policy and an initial premium therefor has been received, the receipt for the premium shall be in writing and may:

(1) Exclude coverage if the proposed insured commits suicide;

(2) void coverage if the application contains material misrepresentation or is fraudulently completed;

(3) limit the coverage otherwise provided by subsection (a) by specifying for each proposed insured the amount and type of temporary coverage granted; and

(4) void coverage if a check or draft received in payment of the premium is not honored for payment when presented.

K.S.A. 40–2112(d) provides in part:

(a) In the event of an adverse underwriting decision . . .

(d) The company or the agent . . . shall refund to the applicant or individual proposed for coverage, the difference between the payment and the earned premium, if any, in the event of a declination of insurance coverage, termination of insurance coverage, or any other adverse underwriting decision.

(1) If coverage is in effect, such refund shall accompany the notice of the adverse underwriting decision, except such refund obligation shall not apply if:

. . . .

(B) the company includes with the notice of the adverse underwriting decision an offer of coverage to an applicant for life insurance under a different policy or at an increased premium. If such a counter-offer is made by the insurer, the insured or the insured's legal representative shall have 10 business days after receipt thereof in which to notify the company of acceptance of the counter-offer, during which time coverage will be deemed to be in effect under the terms of the policy for which application has been made, but such coverage shall not extend beyond 30 calendar days following the date of issuance of the counter-offer by the insurer. The insurer shall promptly refund the premium upon notice of the insured's refusal to accept the counter-offer or upon expiration of such 30 calendar day period, whichever occurs first.

*Analysis*

This is a diversity action. It is undisputed that Kansas law is controlling. In Kansas, "where a policy of insurance is issued to an insured in compliance with the requirement of a statute, the pertinent provisions of the statute must be read into the policy, and no provisions of the policy in contravention of the statute can be giv-

en effect." *Missouri Medical Ins. Co. v. Wong,* 234 Kan. 811, 676 P.2d 113, 120 (1984).

The court finds no support in Kansas statutes or case law for defendant's two-policy argument. After applying the Kansas statutes to the policy at issue, the court shall hold that partial summary judgment should be granted in plaintiff's favor.

■ Under the provisions of K.S.A. 40-451 and 40-2112, the coverage applied for was "in effect" with the completion of the application and receipt of the initial premium. The coverage remained in effect, although it was limited, per the interim insurance receipt and K.S.A. 40-451(b)(1) & (3), pending the underwriting decision. None of the limitations described in K.S.A. 40-451(b) or in the interim receipt in this case, suspend the running of the two-year period in the policy when payment in case of suicide is restricted. With the counteroffer of coverage for an increased premium, full coverage was in effect under the terms of the policy for which the application was made. K.S.A. 40-2,112(d)(1)(B). When the counter-offer was accepted, the policy's full terms remained in effect.

To argue that the policy was not in effect for purposes of the suicide clause until the counter-offer was accepted and the additional premium was received, is contrary not only to the above-cited provisions, but also to the provisions of K.S.A. 40-420(2) which require that a policy be incontestable after it has been "in force during the lifetime of the insured for a period of not more than two years from its date." Under the Kansas statutes, the policy was "in force," if temporarily limited, on December 6, 1993. Extending the period of the suicide clause to the date of issue listed on the policy when it was delivered—or 23 days after the interim insurance receipt date—would in effect abrogate the statutory deadline for contestability. See *American National Insurance Company v. Motta,* 404 F.2d 167, 169 (5th Cir.1968).

■ At the very least, the application of the Kansas statutes to the policy and interim receipt in question creates an ambiguity. Of course, ambiguities must be decided in favor of the insured. See *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456, 459 (1992). Kansas statutes require that various provisions of the policy be in effect at the time of application and receipt of the initial premium. This includes the running of the two-year period before which the policy is incontestable. K.S.A. 40-420(2). Contrary to defendant's contention there is no express provision in the law which creates an exception to this requirement. When the policy makes reference to an "issue date" for the running of the two-year period for contestability or for a limited recovery in the case of suicide, but the Kansas statutes indicate a different effective date for the policy and for the period of contestability, the policy is ambiguous.

The court has examined the cases cited by both sides and other decisions relevant to this case. In the final analysis, we agree with plaintiff that the case law is fact-specific. We further agree with plaintiff that this case turns on the provisions of the Kansas statutes. In our opinion, these statutes require finding that when the application and initial premium were received, the two years started to run during which the recovery in the event of suicide was limited to premiums paid. The two-year period expired before Darrell Stauffer's death.

Accordingly, the court shall grant plaintiff's motion for partial summary judgment and deny defendant's motion for summary judgment. The court encourages the parties to submit an agreed order resolving the remaining issues in this case so that a final judgment may be entered.

**IT IS SO ORDERED.**