POTOMAC RESIDENCE CLUB and
Woodley Housing Corporation,
Appellants,

v.

WESTERN WORLD INSURANCE
COMPANY, Appellee.

WESTERN WORLD INSURANCE
COMPANY, Appellant,

v.

POTOMAC RESIDENCE CLUB and
Woodley Housing Corporation,
Appellees.

Nos. 95–CV–1266, 95–CV–1268.

District of Columbia Court of Appeals.

Argued Jan. 23, 1997.
Decided Dec. 4, 1997.
Amended Jan. 8, 1998.

John L. Moore, Jr., with whom Stephen R. Mysliwiec and James P. Rathvon, Washington, DC, were on the brief, for appellants in No. 95–CV–1266 and appellees in No. 95–CV–1268.

David F. Grimaldi, Washington, DC, for appellee in No. 95–CV–1266 and appellant in No. 95–CV–1268.

Before SCHWELB, KING, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

The principal question presented in this appeal is whether an insured is entitled to recover its counsel fees in a successful action for a declaratory judgment in which the insured has established that its liability insurer wrongfully refused to defend it in a tort action brought against the insured by third parties. The question is one of first impression in this jurisdiction. We answer it in the affirmative.

## I.

## THE FACTS

A. *The insurance policy.*

Potomac Residence Club operates several mental health programs in the District of Columbia. Woodley Housing Corporation, a subsidiary or "sister corporation" of Potomac Residence Club, owns "Woodley House," a psychiatric halfway house. In this opinion, we shall refer to Potomac Residence Club and Woodley Housing Corporation collectively as "Potomac Residence."

In the fall of 1990, Western World Insurance Company issued a comprehensive general liability policy to Potomac Residence. The policy provided three types of coverage: (i) Owners', Landlords' and Tenants' Liability Insurance; (ii) Personal Injury Liability Insurance; and (iii) Professional Liability Insurance.

Under the terms of the policy, Western World agreed to indemnify Potomac Residence for "all sums which [Potomac Residence] shall become legally obligated to pay as damages because of ... bodily injury,"

subject to certain exclusions. Western World also agreed to pay

all sums which [Potomac Residence] shall become legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failing to render professional services of the type described in the description of hazard shown above, whether committed by the insured or any person employed by the insured....

The policy defined "professional services" as "mental health rehabilitation counseling and housing." According to the terms of the policy, Western World was obliged to defend any action instituted against Potomac Residence, "even if any of allegations of the suit are groundless, false or fraudulent....."

The policy contained a "sexual action exclusion" which was added as an endorsement to the policy. The exclusion provided as follows:

It is agreed that no coverage exists for claims or suits brought against any insured for damages arising from sexual action. *Sexual action includes, but is not limited to, any behavior with sexual connotation or purpose*—whether performed for sexual gratification, discrimination, intimidation, coercion or other reason.

It is further agreed that this exclusion applies even if an alleged cause of the damages was the insured's negligent hiring, placement, training, supervision, act, error or omission.

(Emphasis added.)

The "sexual action" exclusion modified the Owners', Landlords' and Tenants' Liability and the Professional Liability Insurance coverages, but it did not apply to Western World's obligations if Potomac Residence was sued for allegedly causing personal injury. The Personal Injury Liability coverage, which was set forth in a separate schedule attached to the policy, obligated Western World to

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out

of one or more of the following offenses committed in the conduct of the named insured's business:

Group A——false arrest, detention or imprisonment

. . . .

Group C——wrongful entry or eviction, or other invasion of the right of private occupancy[.]

## B. *The Zeender litigation.*

On December 19, 1991, Cathy and Ramon Zeender filed a ten-count complaint against Potomac Residence in the Superior Court. The complaint was based on the alleged exploitation of Cathy Zeender by Karen Prieto, a Potomac Residence counselor, at a time when Mrs. Zeender, who was suffering from a Multiple Personality Disorder, was a resident of Potomac Residence's half-way house. The Zeenders alleged that Ms. Prieto engaged in a sexual relationship with Cathy Zeender from December 19, 1990 through January 6, 1991 and that she drank alcohol with Mrs. Zeender, even though Ms. Prieto knew that these activities were improper and potentially harmful to the patient. The complaint also alleged that Ms. Prieto caused Mrs. Zeender to dissociate,[1] contrary to the treatment plan prescribed for Mrs. Zeender by her psychiatrist.

According to the complaint, Edith Maeda, the executive director of Potomac Residence, learned of Ms. Prieto's improper conduct with Cathy Zeender. The Zeenders alleged that, contrary to the directions of Mrs. Zeender's psychiatrist, Ms. Maeda permitted Ms. Prieto not only to continue her employment with Potomac Residence, but also to maintain her relationship with Cathy Zeender. The Zeenders claimed that the defendants' conduct constituted, *inter alia*, breach of fiduciary duty, assault and battery, false imprisonment, intentional infliction of emotional distress, gross negligence, negligent supervision, and breach of contract. They prayed for an award of compensatory and punitive damages totalling one hundred million dollars.

## C. *The declaratory judgment action.*

On December 27, 1991, Potomac Residence forwarded the Zeenders' complaint to Western World and inquired as to coverage. On January 24, 1992, Western World responded that it had no obligation to defend or indemnify Potomac Residence with respect to the Zeender complaint. Western World relied solely on the policy's sexual action exclusion.

According to its brief, Potomac Residence could not afford to pay for legal representation in the *Zeender* matter. The law firms of Piper & Marbury L.L.P. and Kator, Scott & Heller agreed to represent Potomac Residence without fee, but only if the defense costs were not covered by insurance.

In September 1992, *pro bono* counsel for Potomac Residence informed Western World that the Zeenders' attorneys had offered to settle the *Zeender* litigation within the policy limits, and requested that Western World respond to the offer. Western World again disclaimed any obligation to defend or indemnify Potomac Residence. In January 1993, counsel for Potomac Residence informed Western World that if Western World refused to participate in a scheduled mediation conference in the *Zeender* litigation, Potomac Residence would file suit to vindicate its rights under the policy. Western World refused, and on February 12, 1993, Potomac Residence instituted this action against Western World in the Superior Court.

In its complaint, Potomac Residence prayed for a declaratory judgment that Western World owed a duty to defend Potomac Residence in the *Zeender* case, and that Western World had breached this duty. Potomac Residence asked the court to award it the expenses and counsel fees that it had incurred to date in defending the *Zeender* litigation, as well as the costs and fees that it would incur in prosecuting its declaratory judgment action. Potomac Residence also asked the court to declare that Western World was obligated to indemnify Potomac Residence for any amounts that might be

---

1. According to the Zeenders' complaint, "[d]efendants knew ... that their role was to assist in integrating the personalities, and [that] they should avoid causing Mrs. Zeender to dissociate into any of her personalities."

paid to the Zeenders pursuant to an adverse judgment or negotiated settlement. Finally, Potomac Residence included in its complaint a count alleging that Western World had acted in bad faith in denying coverage.

Potomac Residence filed a motion for summary judgment in which it reiterated the position taken in its complaint. Western World opposed the motion, again relying on the sexual action exclusion of the policy. Western World acknowledged in its memorandum in opposition to Potomac Residence's motion that Ms. Prieto's alleged actions "included *but [were] not limited* to behavior with sexual connotation or purpose." (Emphasis added.) In addition to opposing Potomac Residence's motion, Western World cross-moved for summary judgment on all counts of the complaint.

On July 6, 1994, Judge Patricia A. Wynn issued a Memorandum Opinion and Order in which she held that Western World had breached its duty to defend Potomac Residence against the *Zeender* complaint and was therefore liable for damages arising out of that breach. Judge Wynn concluded, *inter alia*, that the allegations in the *Zeender* complaint concerning Ms. Prieto's unauthorized trips with Mrs. Zeender to restaurants and bars were not necessarily sexual in connotation and purpose, and that there was therefore potential coverage under the Professional Liability portion of the policy. The judge also held that the claim for negligent hiring and supervision was not barred by the policy's sexual exclusion. The judge concluded, however, that there was no evidence of bad faith on Western World's part, and she granted summary judgment in favor of Western World as to the bad faith count.

On August 1, 1994, following receipt of Judge Wynn's order, counsel for Potomac Residence submitted to Western World invoices for the costs and fees incurred in the defense of the *Zeender* suit and in prosecuting the instant declaratory judgment action through June 1994. Western World refused to pay these invoices, claiming that they were excessive.

**2.** On appeal, Western World does not challenge the trial judge's holding that it had a contractual

On September 23, 1994, Judge Wynn issued a second Memorandum Opinion and Order in which she held that Potomac Residence was not entitled to recover its costs and counsel fees in prosecuting the declaratory judgment action. On February 27, 1995, "finding no persuasive evidence that plaintiff's costs are not reasonable," the judge ordered Western World to pay $273,-306.37 to Potomac Residence within thirty days as reimbursement for the counsel fees and costs incurred in defending the *Zeender* litigation.

On August 2, 1995, at Potomac Residence's request and with Western World's consent, Judge Stephen G. Milliken certified for interlocutory appeal Judge Wynn's rulings denying Potomac Residence its costs and counsel fees in the declaratory judgment action, dismissing its claim of bad faith, and refusing to award prejudgment interest. Those rulings are now before us for review.[2]

## II.

### THE DECLARATORY JUDGMENT ACTION

A.  *Standard of review.*

The trial judge held that Potomac Residence is not entitled to recover its counsel fees in the declaratory judgment action. That ruling was one of law, and we review the judge's decision *de novo.  Abdullah v. Roach,* 668 A.2d 801, 804 (D.C.1995) (citation omitted).

B.  *The authorities.*

■ We begin our discussion of the dispositive legal issue by noting that

> this jurisdiction follows "the American Rule under which ... every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions," such as the conventional "bad faith" exception.

*Oliver T. Carr Co. v. United Techs. Communications Co.,* 604 A.2d 881, 883 (D.C.1992)

obligation to defend the Zeenders' lawsuit against Potomac Residence.

(citation omitted); *see, generally, Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257–61, 95 S.Ct. 1612, 1621–24, 44 L.Ed.2d 141 (1975). Western World asks us to sustain the trial court's decision denying Potomac Residence its counsel fees in the declaratory judgment action, claiming that we are required to do so by our precedents applying the American Rule. Potomac Residence contends, on the other hand, that this case is qualitatively different from those in which we have followed the American Rule in the past, and that we should adopt the approach of the Maryland courts[3] and many other courts[4] which have sustained awards of counsel fees in the kind of situation presented here. Although the sharp disagreement among the courts reflects that the issue is not free of difficulty,[5] we agree with Potomac Residence.

In obtaining a liability insurance policy which contains a provision obligating the insurer to defend covered claims against the insured, the policyholder is attempting to provide in advance for the defense of any such claim against it. The insured's purpose in securing such a policy is to transfer to the insurer the task of retaining counsel to de-

---

3. See, *e.g., Bankers & Shippers Ins. Co. v. Electro Enters., Inc.,* 287 Md. 641, 415 A.2d 278, 289 (1980); *Cohen v. American Home Assurance Co.,* 255 Md. 334, 258 A.2d 225, 239 (1969); *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.,* 113 Md.App. 540, 688 A.2d 496, 514 (1997); *cf. Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 607 A.2d 537, 544 (1992). For historical and other reasons, we accord most respectful consideration to decisions of the Maryland Court of Appeals. *See Ford v. United States,* 616 A.2d 1245, 1252 n. 16 (D.C.1992) (citation omitted). As in *Ford,* however, we follow the Maryland cases cited primarily because of the force of their reasoning.

4. See, *e.g., Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759, 765–66 (7th Cir.1986) (citing Illinois Supreme Court's decision in *Conway v. Country Cas. Ins. Co.,* 92 Ill.2d 388, 65 Ill.Dec. 934, 938, 442 N.E.2d 245, 249 (1982)), *but cf.* Judge King's opinion, *post* at 1245–1246, note 14 (discussing Illinois intermediate appellate cases); *National Cycle, Inc. v. Savoy Reinsurance Co., Ltd.,* 938 F.2d 61, 64 (7th Cir.1991); *McGreevy v. Oregon Mut. Ins. Co.,* 128 Wash.2d 26, 904 P.2d 731, 735–36 (1995) (en banc); *Olympic S.S. Co. v. Centennial Ins. Co.,* 117 Wash.2d 37, 811 P.2d 673, 681 (1991); *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156, 159–61 (1986); *Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822, 825 (Minn.1980); *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.,* 274 S.C. 468, 265 S.E.2d 38, 40 (1980); *Wheeler v. Reese,* 835 P.2d 572, 577 (Colo.App.1992); *City of Willoughby Hills v. Cincinnati Ins. Co.,* 26 Ohio App.3d 146, 499 N.E.2d 31, 34 (1986); *see also Missouri Med. Ins. Co. v. Wong,* 234 Kan. 811, 676 P.2d 113, 122–23 (1984) (insured entitled to award of counsel fees in insurer's unsuccessful declaratory judgment action to establish lack of coverage); *Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350, 1354–55 & n. 2 (Me.1996) (insured entitled to recover counsel fees in insurer's declaratory judgment action if insurer's duty to defend is clear, for "the insurer should not enjoy the usual freedom to litigate without concern about the possibility of having to pay the other party's attorneys' fees"; "bad faith," which the court

deemed a "subjective and often misleadingly pejorative concept," need not be shown); *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, 78 (1986) (policyholder may recover counsel fees whenever he successfully sues his own insurer over property damage claim; American Rule, which makes "eminently good sense" in most circumstances, "works badly" in the insurance context on account of the "disparity of bargaining power between company and policy holder (often exacerbated by the dynamics of the settlement bureaucracy)). . . ."

The courts in the cases that we have cited have articulated various rationales for their rulings. Some have held that counsel fees in the declaratory judgment action constitute consequential damages flowing directly from the insurer's breach. Others have treated the insurer's refusal to honor its obligations under the policy as an authorization to the insured to retain other counsel. There have also been variations in the language of the policies before the different courts. The common theme of all of these decisions, however, is that application of the American Rule is inappropriate in the kind of scenario now before this court.

5. The following authorities are among those favorable to Western World's position: *Shepard Marine Constr. Co. v. Maryland Cas. Co.,* 73 Mich. App. 62, 250 N.W.2d 541, 543 (1976); *New Hampshire Ins. Co. v. Christy,* 200 N.W.2d 834, 845 (Iowa 1972); *Lujan v. Gonzales,* 84 N.M. 229, 501 P.2d 673, 682 (App.1972); *State Farm Mut. Auto. Ins. Co. v. Vails,* 278 Ala. 266, 177 So.2d 821, 826 (1965); *Carter v. Virginia Sur. Co.,* 187 Tenn. 595, 216 S.W.2d 324, 328 (1948); *Maryland Cas. Co. v. Sammons,* 63 Ga.App. 323, 11 S.E.2d 89, 92 (1940); *Bonnie Owen Realty, Inc. v. Cincinnati Ins. Co.,* 283 Ill.App.3d 812, 219 Ill.Dec. 294, 300, 670 N.E.2d 1182, 1188 (1996); *Mikel v. American Ambassador Cas. Co.,* 644 N.E.2d 168, 173 (Ind.App.1994); *Clemmons v. Zurich Gen. Accident & Liab. Ins. Co.,* 230 So.2d 887, 895 (La.App.1969); and *American Family Mut. Ins. Co. v. Brown,* 631 S.W.2d 375, 379 (Mo.App.1982).

fend the case in the event that the insured is sued by a third party. If we were to adopt the position urged upon us by Western World, then an insurer who wrongfully refused to defend could irrevocably deprive the insured of one of the principal benefits for which the insured paid its premiums. Even if the insured were ultimately—and often, as in this case, quite belatedly—compensated for its defense of the third party's suit, the insured would remain permanently out of pocket for the expenses of the declaratory judgment action which it was compelled to bring as a result of the insurer's breach of its contractual duty. We do not believe that the American Rule was intended to deny counsel fees to an insured where, as here, that insured bought its policy and paid its premiums in order to secure its freedom from having to defend lawsuits and to pay counsel fees. The doctrine propounded by Western World would prevent Potomac Residence from enjoying the very benefit for which it bargained when it bought a policy containing a duty-to-defend provision.

In *Cohen, supra* note 3, as in this case, the defendant insurer declined to provide a defense for the plaintiff, in violation of the terms of a liability insurance policy. Like Potomac Residence, the plaintiff obtained a declaratory judgment establishing that the insurer's refusal to defend was unjustified. The plaintiff asked the court, *inter alia,* for an award of counsel fees in the declaratory judgment action. Noting that some courts had declined to grant such relief "in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer," the Maryland Court of Appeals, in a unanimous opinion, adopted the following assessment of the issue in a leading treatise:

> But, despite the qualifications placed upon this rule by the [courts requiring a showing of fraud or its equivalent], it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.

*Id.* 258 A.2d at 235 (quoting 7A JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4691 (1962)). The court stated that the insurer had "produced the current situation when it refused to defend," *id.* at 239, and that

> whether one speaks in terms of its having authorized the expenditure by its failure to defend or whether one speaks in terms of the attorney's fees for the declaratory judgment action being a part of the damages sustained by the insured by American Home's wrongful breach of the contract, we hold American Home bound to pay the fees incurred by Mrs. Brown in bringing the declaratory judgment action to establish that American Home had not done that which it had agreed with her to do.

*Id.*[6]

In *Olympic Steamship Co., supra* note 4, the insurance policy in question provided that the insurer "shall have the right and duty to defend any suit against the insured seeking damages on account of ... personal injury or property damage[.]" *Id.* 811 P.2d at 676. Third parties claimed that the insured was liable to them as a result of the defective packing of certain cans of salmon. Although no lawsuit had been filed, the in-

---

**6.** The Maryland Court of Appeals has declined to extend the *Cohen* rule, and it has held that in the absence of a showing that the insurer acted in bad faith, an insured was not entitled to recover its counsel fees in a successful declaratory judgment action brought to establish coverage under a medical insurance policy. *Collier, supra* note 3, 607 A.2d at 542–43. In *Collier,* however, the policy in question did not contain a duty-to-defend provision. The language from *Collier* quoted by our dissenting colleague, *post* at 1245, must be understood in that context. We have no occasion here to express either agreement or disagreement with the holding in *Collier.*

sured demanded that the insurer deal with the third parties' claims. The insurer denied coverage, and the insured settled with the third parties and instituted an action against the insurer. The Supreme Court of Washington sustained the insured's claim on the merits and held that the insured was entitled to recover its counsel fees in the suit against the insurer:

> We also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured. Other courts have recognized that disparity of bargaining power between an insurance company and its policyholder makes the insurance contract substantially different from other commercial contracts. *Hayseeds, Inc. v. State Farm Fire & Cas.*, [177 W.Va. 323], 352 S.E.2d 73, 77 (W.Va.1986). When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." 352 S.E.2d at 79. Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured.... Further, allowing an award of attorney fees will encourage the prompt payment of claims. 352 S.E.2d at 79.

811 P.2d at 681.[7]

In *Pitrolo, supra* note 4, the court held that an insurer which breached its duty to defend was liable to its insured for counsel fees extended by the insured in a declaratory judgment action to establish coverage. The court stated that "to hold otherwise would be unfair to the insured, who originally pur-chased the insurance policy to be protected from incurring attorney's fees and expenses from litigation." *Pitrolo,* 342 S.E.2d at 160. In the court's view,

> those courts that refuse attorney's fees in a declaratory judgment action or require a showing that the insurer acted in bad faith or unreasonably in refusing to defend cast an unfair burden on the insured. Whether an insurer's refusal to defend was in good or bad faith is largely irrelevant once it has been established that the insurer breached its contract with its insured.

*Id.* The court then went on to quote the passage from the Appleman treatise set forth at page 1233 of this opinion, *supra. Id.* at 161.

The issue before us has been addressed in some detail in Robert E. Keeton & Alan I. Widiss, Insurance Law (1988). The discussion in this treatise is especially instructive with respect to the unique problems that arise in the insurance context, *see McGreevy, supra,* 904 P.2d at 736, and we quote from it at some length:

> A denial of an insurance claim typically has several consequences for an insured. *First,* any time there is a denial of an insurance claim, that action obviously extends the period during which the insured must incur the adverse economic consequences of the loss without the benefit [of] being indemnified by the insurance. *Second,* an insured who is forced to litigate to recover insurance incurs legal expenses—which include, but are not limited to fees charged by an attorney—to secure the insurance payments. *Third,* many insureds also sustain a variety of consequential problems, including harm to credit standing and loss of business. When an insured is compelled to resort to litigation to recover insurance benefits, the insured is denied indemnification for what, at least in many instances, is a very significant aspect of the economic risks incident to the

---

7. In *McGreevy v. Oregon Mut. Ins. Co., supra* note 4, the Supreme Court of Washington reiterated its holding in *Olympic Steamship Co.* The court stated that its decision "does not do violence to the American rule on attorney fees," 904 P.2d at 735, because "an insurance contract is substan-tially different from other commercial contracts," both in terms of disparity of bargaining power and because the purpose of obtaining such insurance is to avoid litigation and the expenses associated with it. *Id.* at 736.

hazards against which the insured sought protection when the insurance was purchased. Thus, when the payment of insurance benefits is only made after an insured has sought the assistance of an attorney and the legal process, the insured not only sustains added legal expenses but also is denied the right to prompt indemnification (which is one of the risks insureds seek to avoid through the acquisition of insurance).

\* \* \* \*

If, because the insurer is found to have acted reasonably in rejecting the claim, an insured's recovery is limited to an award of the amount of insurance benefits due, the amount provided by the insurance coverage—after the insurance recovery is reduced by the insured's payment of the lawyer's fee and other litigation expenses—is obviously diminished. The net amount actually received by such a claimant is then insufficient to indemnify the insured, often falling far short of that which the insured reasonably anticipated would be available as an insurance benefit to offset the economic loss that resulted as a consequence of the insured event.

*Id.* § 7.7(c), at 871.

In the present case, counsel for appellants have represented to the court that, if Potomac Residence had not been able to obtain *pro bono* legal representation, Western World's breach of its obligations under the policy would have driven Potomac Residence out of its business of providing mental health services. Having paid its premiums, Potomac Residence had a right to expect that it would not be required to retain counsel or conduct litigation at its own expense. When Western World declined to defend it, Potomac Residence was suddenly confronted with the need for representation in two lawsuits—as defendant in the *Zeender* action, and as plaintiff in the declaratory judgment suit. Although the trial judge held, after the fact, that Potomac Residence is entitled to compensation for its defense of the *Zeender* suit, disagreement about the amount of recovery has meant that relief has been painfully slow in coming and has not reached the plaintiff yet. Under the trial court's disposition, Po-

tomac Residence will not receive any compensation at all for its costs and counsel fees in the declaratory judgment action. Like the courts in the cases that we have cited and many others, we conclude that, in the particular context of insurance coverage litigation of the kind now before us, such a result is unacceptable.

## C. *Stare decisis considerations and M.A.P. v. Ryan.*

Judge King argues in dissent that this court is obliged, under the doctrine of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), to apply the American Rule and require Potomac Residence to pay its own counsel fees. We do not agree.

The parties have cited no District of Columbia precedent, and we have found none, squarely deciding the question whether the American Rule is applicable to a situation like the present one, in which the insured has paid its premiums for the specific purpose of avoiding any obligation to retain or pay counsel, and in which the insurer's breach has denied the insured the representation to which it had a right under the terms of the policy. The closest case to this one is *Siegel v. William E. Bookhultz & Sons, Inc.,* 136 U.S.App. D.C. 138, 419 F.2d 720 (1969). In *Siegel,* the court held that the insured was entitled to recover litigation costs and counsel fees incurred in a declaratory judgment action to establish insurance coverage where the insurer (1) erroneously refused to provide a defense after a "dubious investigation"; (2) steadfastly resisted the insured's attempts to establish the right to a defense; and (3) abandoned an "obviously helpless insured to whatever might come," leaving the insured in a "hapless predicament." *Id.* at 143, 419 F.2d at 725. Although the court also stated that it could not "ignore the insured's expense of litigation where the insurer, *however honestly motivated,* acts at its peril in disregarding the insured's claim to a defense," *id.* (emphasis added), *Siegel* cannot fairly be read as deciding whether the insured is entitled to counsel fees in a declaratory judgment action to establish coverage in the absence of the oppressive conduct by the insurer which the court discerned in that

case. *Siegel* therefore does not dispose of the issue before us.[8]

Judge King relies on *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.,* 451 A.2d 66 (D.C.1982), a case not cited by the parties. In *Safeway Stores,* a supermarket security guard who was employed by Chamberlain allegedly assaulted a customer. The customer brought an action against both Safeway and Chamberlain, asserting that they were joint tortfeasors. Safeway filed a cross-claim against Chamberlain in which it alleged that Chamberlain was primarily liable for the plaintiff's injury, and that Chamberlain owed Safeway a duty of indemnification. The jury found both defendants liable to the plaintiff and ruled in Chamberlain's favor on Safeway's request for indemnification. The trial judge, however, granted Safeway's motion for judgment n.o.v. on the cross-claim, concluding that Chamberlain had an "implied obligation ... to indemnify Safeway." *Id.* at 68. Safeway then sought to recover its counsel fees as part of Chamberlain's obligation of indemnity. The trial court denied relief and this court, invoking the American Rule, affirmed. *Id.* at 68–73.

We think that *Safeway Stores* is distinguishable from the present case in decisive respects. Although Chamberlain, a primary tortfeasor, had an "implied obligation" to indemnify Safeway, the agreement between the two parties did not center on any duty on the part of Chamberlain to assure that Safeway would not have to retain counsel. On the contrary, Safeway hired Chamberlain to maintain order in Safeway's supermarket, not to provide Safeway with legal representation. *Safeway Stores* is not dispositive here because the considerations which make application of the American Rule so incongruous and unfair in the present context, see pp. 1231–1235, *supra,* simply did not arise.

Our position is supported by *Link v. District of Columbia,* 650 A.2d 929 (D.C.1994), a case which also addressed the scope of the American Rule. In that case, we rejected the position that the enumeration in *Alyeska* and subsequent cases of three exceptions to that Rule precludes the recognition of any other exceptions, no matter what the circumstances may be. In *Link,* the District of Columbia was adjudged to be in civil contempt of a Superior Court order, but the trial judge expressly found that the disobedience was not willful. The plaintiff, who was represented by attorneys from the Neighborhood Legal Services Program at no cost to herself, requested an award of counsel fees in connection with the conduct of the civil contempt proceedings. The Supreme Court had stated in *Alyeska* that in the exercise of its equitable authority, "a court may assess attorneys' fees for the willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 421 U.S. at 258–59, 95 S.Ct. at 1622 (quoted in *Link,* 650 A.2d at 931). Seizing on that language, the District argued that, absent a showing of willfulness, *Alyeska* and this court's precedents applying the American Rule precluded an award of counsel fees to the plaintiff in *Link.*

This court rejected the District's contention. We noted that *Alyeska* was not a contempt case, and that the Supreme Court had not addressed the question before us in *Link* and could not have decided it. 650 A.2d at 932. We held that because the District had violated an order of the court, the plaintiff was entitled to an award of counsel fees in spite of her failure to prove that the District had acted willfully, oppressively, or in bad faith. *Link,* 650 A.2d at 931–33. We thus recognized a "civil contempt" exception to the American Rule, and we declined to read as dispositive decisions in which we had applied the American Rule, under entirely different circumstances, to deny counsel fees to a prevailing party.

---

**8.** Potomac Residence contends that, contrary to the trial judge's conclusion, Western World's conduct was just as oppressive as that of the insurer in *Siegel.* In light of the discussion in Part II B, *supra,* we need not address that issue in relation to Potomac Residence's request for counsel fees for the declaratory judgment action.

Given the policy's sexual exclusion clause and the substantially sexual nature of Ms. Prieto's alleged conduct, the record supports the trial judge's determination that the evidence was not sufficiently extreme to support a claim of bad faith denial of coverage.

Our problem here is not unlike that which confronted the court in *Link*.[9] The denial of counsel fees in the present context raises issues which have not previously been considered by this court. "[T]he rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996) (quoting *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C.1994)); *see also Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 720 (D.C.1995). The judicial mind cannot fairly be said to have passed on the issue before us.

Our dissenting colleague's position is also effectively foreclosed by our very recent decision in *Carl v. Children's Hosp.*, 702 A.2d 159 (D.C.1997) (en banc) (per curiam) (*Carl II*). In that case, a nurse who was an "at-will" employee claimed that Children's Hospital had wrongfully discharged her in retaliation for testifying before the Council of the District of Columbia in opposition to proposed tort reform legislation and for appearing as a plaintiff's expert witness in medical malpractice litigation. The trial judge dismissed the complaint for failure to state a claim upon which relief may be granted. A division of this court affirmed. *Carl v. Children's Hosp.*, 657 A.2d 286 (D.C.1995) (*Carl I*). The division was of the opinion that, as interpreted in subsequent case law,[10] our earlier decision in *Adams v. George W. Cochran Co.*, 597 A.2d 28 (D.C.1991), in which we held that it was unlawful for an employer to discharge an employee for refusing to violate a statute, represented the sole permissible exception to the "employment at-will doctrine,"[11] and that a division of this court was not at liberty to recognize any new exception. *Carl I*, 657 A.2d at 288–89; *see also id.* at 294 (Farrell, J., concurring).

In *Carl II*, however, this court, sitting en banc, rejected the division's reasoning. The court held that the

"very narrow exception" created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition.... "We could not and did not hold in *Adams* that this was the *only* public policy exception, because that question was simply not

9. According to our dissenting colleague, *Link* merely "refined the definition of a recognized exception to the American Rule," and therefore "cannot be read as authority for a division of this court to adopt any 'new' exception...." On the contrary, we held in *Link* that the description, in *Alyeska* and in our post-*Alyeska* jurisprudence, of specific exceptions to the American Rule was not necessarily exclusive, and could not and did not preclude a division of this court from recognizing an additional exception on an appropriate record:

As former Chief Judge Robinson has correctly observed, however, "*Alyeska* was not a contempt case, so there was no need in that action for the Court to discuss whether a finding of willfulness is a prerequisite to the award of attorneys' fees in a civil contempt proceeding." *Motley* [*v. Yeldell*, 664 F.Supp. 557, 558 (D.D.C.1987) ]; *accord, Perry* [*v. O'Donnell*, 759 F.2d 702, 705 (9th Cir.1985) ]. The Supreme Court has itself prudently issued the following warning:

It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. *To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.* General expressions transposed to

other facts are often misleading. *Armour & Co. v. Wantock*, 323 U.S. 126, 132–33 [65 S.Ct. 165, 168, 89 L.Ed. 118] (1944); *see also Tenants of 1255 New Hampshire Avenue, N.W. v. District of Columbia Rental Hous. Comm'n*, 647 A.2d 70, 77 & n. 8 (D.C.1994). The Supreme Court's allusion in *Alyeska* to "willful" disobedience of a court order cannot reasonably be construed to resolve a question not before the Court, namely whether the remedial authority of a court of equity following a violation of that court's decree extends to the award of counsel fees occasioned by the contemnor's noncompliance. If *Alyeska* is read "in light of the facts of the case [there] under discussion," *Armour & Co.*, *supra*, 323 U.S. at 133 [65 S.Ct. at 168], ... then its application or lack thereof to this appeal becomes readily apparent.

*Link*, 650 A.2d at 932 (emphasis added).

10. See, *e.g., Gray v. Citizens Bank of Washington*, 602 A.2d 1096, 1097 (D.C.) vacated, *id.* at 1102, opinion reinstated on denial of rehearing en banc, 609 A.2d 1143 (D.C.1992) (en banc).

11. This doctrine provides that in the absence of a statutory proscription or contractual provision, an employer may discharge an at-will employee for any reason or for no reason.

presented." *Adams* simply said that there is "*a* very narrow exception to the at-will doctrine," not "just one and only one" such exception. There is nothing in the *Adams* opinion that bars this court—either a three-judge panel or the court en banc—from recognizing some other public policy exception when circumstances warrant such recognition. On this point a majority of the en banc court agrees.

*Carl II*, 702 A.2d at 160 (citations omitted); *see also id.* at 161 (Terry, J., concurring); *id.* at 166 (Ferren, J., concurring); *id.* at 174 (Schwelb, J., concurring); *id.* at 186 (Mack, J., concurring).

Our dissenting colleague's approach in this case is essentially identical to that taken by the division in *Carl I*. Just as the division in that case asserted that *Adams* represented the sole exception to the "at-will doctrine," so Judge King now says that the three exceptions to the American Rule enumerated in *Alyeska* constitute the sole permissible exceptions to that Rule. Judge King thus continues to insist that decisions by the Supreme Court and by this court should be construed as deciding "[a] question [that] was simply not presented." *Carl II*, *supra*, 702 A.2d at 160. In *Carl II*, the en banc court squarely and emphatically rejected that proposition.

\* \* \* \*

We reiterate what should be obvious to the reader: our decision is a narrow one. The American Rule is alive and well in the District of Columbia. It simply does not apply where, as in this case, the agreement between the insurer and its insured discloses that the latter has paid its premiums to ensure that it will not have to retain or compensate counsel, and the insurer's breach frustrates those expectations. "We do not purport in this opinion to instruct trial judges how to rule on facts substantially different from those here." *Mims v. Mims*, 635 A.2d 320, 325 n. 12 (D.C.1993).

---

12. *See also* the concurring opinion of Judge Tamm, 219 U.S.App. D.C. at 113, 675 F.2d at 1338: ("[I]t *is not* enough for an opposing party simply to state ... that the hours claimed are excessive and the rates submitted too high.... [If the objections] appear to be more in the

## III.

## OTHER ISSUES

Western World has cross-appealed from Judge Wynn's order awarding Potomac Residence $237,306.37 for its costs and counsel fees in the defense of the *Zeender* litigation. Potomac Residence contends that the award was fully justified, but that the judge erred in denying Potomac Residence prejudgment interest on that amount. We consider each of these issues in turn.

*A. The award of costs and counsel fees.*

In her February 27, 1995 order awarding Potomac Residence its fees and costs for the defense of the *Zeender* suit, the trial judge stated that she found "no persuasive evidence that Plaintiff's costs are not reasonable." The judge did not, however, elaborate upon this conclusion. Western World concedes that Potomac Residence is entitled to recover reasonable counsel fees and costs, but contends that the award is excessive and that the trial judge should have granted Western World's request for discovery and for a hearing to determine whether the amount prayed for was appropriate.

Potomac Residence responds that Western World's objections come too late, that they are insufficiently specific, and that Western World's alleged failure to seek additional information when Potomac Residence first presented its demand constituted a waiver of any right to discovery. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 219 U.S.App. D.C. 94, 675 F.2d 1319 (1982).[12]

■ The trial judge has broad discretion in determining whether and in what amount counsel fees should be awarded. *Bagley v. Foundation for Preservation of Historic Georgetown*, 647 A.2d 1110, 1115 (D.C.1994); *see also District of Columbia v. Jerry M.*,

---

nature of a blunderbuss attack than a precise and well-founded challenge, the [opponent] has failed to carry its burden, and, assuming that plaintiff has met [its] threshold burden, the fees requested by plaintiff should be awarded.")

580 A.2d 1270, 1280–81 (D.C.1990).[13] We defer to the judge's exercise of discretion because he or she is in the trenches, and therefore has a superior understanding of the litigation and of the essentially factual issues relevant to an appropriate award. *Hampton Courts Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 599 A.2d 1113, 1115 (D.C.1991); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). But although a "'request for attorney's fees should not result in a second major litigation' ... [t]he trial court's findings must be reasonably specific." *Bagley, supra,* 647 A.2d at 1115 (quoting *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941).

■ In the present case, the parties are at odds not only as to the reasonableness of the fees requested by counsel for Potomac Residence but also as to the timeliness and sufficiency of Western World's objections. Although it appears that discovery was requested by Western World and denied, the record does not disclose the reasons for that denial. The amount in controversy is quite substantial, and we think it appropriate to remand the case to the trial court for findings of fact and conclusions of law as to the issues, both procedural and substantive, which have been raised by the parties regarding the award. We emphasize, however, that a new full-blown quasi-lawsuit over the amount to which Potomac Residence is entitled would not be in the interests of justice.

## B. *Prejudgment interest.*

The trial judge denied without explanation Potomac Residence's request for prejudgment interest on the award it received for the defense of the *Zeender* suit. Potomac Residence contends that this was error.

The decision whether to award prejudgment interest is confided to the discretion of the trial court. *District of Columbia v. Pierce Assocs., Inc.,* 527 A.2d 306, 310 (D.C.1987). We have stated, albeit in circumstances significantly different from those presented here, that prejudgment interest in contract cases is not favored. *Blake Constr. Co. v. C.J. Coakley Co., Inc.,* 431 A.2d 569, 580 (D.C.1981) (citing *Flanaghan v. Charles H. Tompkins Co.,* 86 U.S.App. D.C. 307, 308, 182 F.2d 92, 93 (1950) (per curiam)).[14]

■ Judicial discretion must be based on correct legal principles, and the judge's determination must be drawn from a firm factual foundation. *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991) (citations omitted). Because the judge did not state her reasons for denying Potomac Residence's claim, we do not know what considerations led to her ruling. Under the circumstances, and in light of Potomac Residence's arguments, a remand for further consideration is appropriate.

We summarize some considerations relevant to the "prejudgment interest" calculus. The *Zeender* suit was filed on December 19, 1991, almost six years ago. On March 6, 1995, some two and a half years ago, the trial judge ordered Western World to pay Potomac Residence more than a quarter of a million dollars for the defense of that suit. The amount to which Potomac Residence is entitled has been in dispute, however, and Potomac Residence has yet to be paid. Western World has enjoyed what Potomac Residence calls "the double benefits of investing both the insurance premiums paid by [Potomac Residence] and the money it owes for its insured's defense costs."

Under the provisions of D.C.Code § 15–109 (1995), the Superior Court is empowered

---

**13.** Potomac Residence also contends that because it is seeking an award of counsel fees based on a contract, its burden is lower than it would be in a statutory fee case. "It is most important to note the distinction between claims for attorney's fees brought in the context of private damages actions and those made under a statute authorizing recovery of attorney's fees by prevailing parties in suits against the government or in civil rights cases." *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.,* 240 U.S.App. D.C. 88, 97, 743 F.2d 932, 941 (1984). Potomac Residence asserts, however, that we need not decide whether a different standard applies because its defense costs in the *Zeender* litigation were "clearly reasonable."

**14.** In *Blake,* however, we sustained an award of prejudgment interest as "necessary to fully compensate the plaintiff." 431 A.2d at 580. *Blake* and *Flanaghan* both involved controversies between contractors and subcontractors.

to award prejudgment interest. This court has interpreted that statute to authorize this relief if such an award is necessary "to fully compensate the plaintiff." *Pierce Assocs.*, 527 A.2d at 310; *House of Wines, Inc. v. Sumter*, 510 A.2d 492, 499 (D.C.1986). Where a plaintiff has been deprived of the use of money withheld, prejudgment interest is often an element of complete compensation. *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C.1990) (*Riggs I* ).

At common law, prejudgment interest was viewed as a penalty to be used to punish the wrongdoing of a delinquent debtor. *Pierce Assocs.*, 527 A.2d at 310. "Out of this view, the dichotomy between unliquidated and liquidated amounts arose.... [I]t was deemed unfair to penalize one who failed to tender payment when he could not know the amount of the debt." *Id.* at 310–11.

[6] Our more recent decisions have recognized that prejudgment interest is often one significant element of damages. *Id.* Interest is not awarded in order to exact a penalty; rather, its primary purpose is to compensate the plaintiff for the loss of use of his money. *District of Columbia v. Potomac Elec. Power Co.*, 402 A.2d 430, 441 (D.C. 1979). Under this approach, the liquidated or unliquidated character of the debt is not dispositive, for "the important question is whether the plaintiff has been deprived of the use of the money withheld and should be compensated for the loss." *Pierce Assocs.*, 527 A.2d at 311; *see also, e.g., Riggs Nat'l Bank v. Carl G. Rosinski Co.*, 596 A.2d 997, 1000 (D.C.1991) (*Riggs II* ) (prejudgment interest may be awarded on an unliquidated debt). Where the plaintiff has been deprived of the use of the money withheld, "prejudgment interest is an element of complete compensation for the loss of use of such money 'from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Riggs I, supra*, 581 A.2d at 1253 (quoting *West Virginia v. United States*, 479 U.S. 305, 310–11 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987)).

We have also recognized that a defendant is unjustly enriched if he is permitted to benefit from the income from funds which he owes to the plaintiff and which he has wrongfully withheld. "Where the debtor should have paid what he owed but did not do so, a denial of prejudgment interest would deny full compensation to the creditor while allowing the recalcitrant party to take advantage of its own wrong and become the richer for it." *Riggs I, supra*, 581 A.2d at 1253. The defendant "cannot be heard to say that it is fair and equitable that it should enjoy [the use of plaintiff's money] for so long, and pay not a cent for it." *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 370 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975).

■ An award of prejudgment interest in the insurance context has three goals: "to provide full and fair compensation to plaintiffs, to encourage settlements, and to discourage delay by defendants." *Nationwide Mut. Ins. Co. v. Lafarge Corp.*, 910 F.Supp. 1104, 1112 (D.Md.1996). Potomac Residence argues that each of these purposes would be served by an award of prejudgment interest in this case. According to Potomac Residence, the court's failure to make such an award (1) deprives it, for a substantial period of time, of the use of and income from money which rightfully belongs to it; (2) discourages settlement, because as long as the case is pending Western World retains (and can invest) both the money it owes and the premiums that it has received; and (3) provides a disincentive to prompt payment, since the same number of dollars will buy less in, say, 1998, than when the controversy began in 1991.

■ Judge King takes the position that because Potomac Residence has not paid any legal fees to its *pro bono* counsel, it is not out-of-pocket, and therefore should not be entitled to an award of prejudgment interest as to its legal fees.[15] We have held, however, that

> [i]n determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel ... are employed by ...

**15.** Western World has not made this particular argument in its brief.

a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees.

*Link, supra,* 650 A.2d at 934 (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). We went on to explain that

> [w]hen free legal services are provided there may be no direct barrier to the courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere....

*Link,* 650 A.2d at 934 (quoting *Hairston v. R & R Apartments,* 510 F.2d 1090, 1092 (7th Cir.1975)). We think that the reasoning in *Link* with respect to counsel fees applies with equal force to the plaintiff's right to recover prejudgment interest on those fees.

\* \* \* \*

In summary, the trial court did not address Potomac Residence's arguments for an award of prejudgment interest. On remand, the judge should reconsider her exercise of discretion in light of the authorities discussed in this Part III. B of our opinion. She should also articulate, in writing or orally on the record, the basis for her decision, either way, with respect to the appropriateness of an award of prejudgment interest to Potomac Residence.[16]

---

**16.** The numbers cited do not all add up because some states have allowed fee awards on one or more grounds but have rejected such an award on some other ground or grounds.

**1.** *Oliver T. Carr Co. v. United Tech. Comm. Co.,* 604 A.2d 881, 883 (D.C.1992) (quoting *Dalo v. Kivitz,* 596 A.2d 35, 37 (D.C.1991)).

**2.** *Arcambel v. Wiseman,* 3 Dall. 306, 1 L.Ed. 613 (1796); *see Fleischmann Corp. v. Maier Brewing,* 386 U.S. 714, 717–18, 87 S.Ct. 1404, 1406–07, 18 L.Ed.2d 475 (1967); the Supreme Court's most comprehensive discussion of the American Rule can be found in *Alyeska Pipeline Serv. Co. v.*

## IV.

### CONCLUSION

For the foregoing reasons, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

KING, Associate Judge, concurring in part and dissenting in part:

Although there are few legal principles, other than those of a constitutional nature, that can be said to be cast in stone, there are two rules of law in this jurisdiction which are so fundamental and so time-honored that they have come to be considered as bedrock principles. One, known as the American Rule, holds that "every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions."[1] That principle was first set forth by the Supreme Court over 200 years ago[2] and, so far as I can determine, was first explicitly stated some fifty years ago by a court in this jurisdiction.[3] It has been repeatedly reaffirmed in cases decided by this court since then.[4] The other "bedrock" principle, known as *M.A.P. v. Ryan,* which is of more recent vintage, holds "that no division of this court will overrule a prior decision of this court ... and that such result can only be accomplished by this court en banc."[5] This principle has never been called into question and has been cited and followed countless times by this court since it was first laid down. Remarkably, by allowing an award of attorneys' fees in this declaratory judgment action, even though there is no

---

*Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) where it declined to recognize an exception which would allow an award of attorneys' fees in actions where a litigant acted as a "private" attorney general.

**3.** *See Murphy v. O'Donnell,* 63 A.2d 340 (D.C. 1948).

**4.** *See, e.g., Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979) and cases cited therein.

**5.** *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

statute, contractual provision, or recognized common law exception allowing it, the majority has managed to violate both of these venerable rules of law. For that reason, I dissent from the principal holding of the court.

The majority defends the course it has taken on two general grounds. First, it claims, for various reasons, that the rule of *M.A.P. v. Ryan*, does not bar any division of this court from recognizing any new exception to the American Rule it thinks appropriate. Second, the majority is persuaded to the result it has reached in no small part because of the "force of the[ ] reasoning" in Maryland cases adopting the same exception to the American Rule.[6] *Ante* at 1232, note 3. I disagree with the majority on the first ground for the reasons discussed below. On the second, the majority appears to be more favorably disposed to the reasoning in the Maryland cases than that state's highest court which has recently questioned the underlying legal theories advanced in support of the extension of the American Rule to include an award of attorneys' fees in circumstances similar to those here.

As noted above, the American Rule is generally stated as requiring each party to pay its own attorneys' fees unless a statute or contractual provision provides otherwise. Three exceptions to that rule were noted by the Supreme Court in its landmark *Alyeska* decision: attorneys' fees may be assessed "for the willful disobedience of a court order"; when the opposing party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons"; or from a fund preserved for the benefit of others. *Id., supra* note 2, 421 U.S. at 257–59, 95 S.Ct. at 1621–23. In the federal courts no other generally applicable exception has ever been recognized.[7] Until today, no other exception to the American Rule has ever been approved by this court.[8]

## I.

The principal basis for its conclusion that *M.A.P. v. Ryan* does not prevent it from recognizing a new exception to the American Rule is the majority's observation that there is no authoritative holding to the contrary. In short, so the argument goes, because this court has never expressly ruled that attorneys' fees are not available in these circumstances, a division of this court is free to decide that such fees may be awarded. While I concede that we have never directly held that fees may not be awarded on the facts presented here, the American Rule with its three generally recognized exceptions is so embedded into our civil jurisprudence that it has become the authoritative statement of the governing legal principle. In short, it is fair to say that the *Oliver T. Carr* definition of the American Rule, by virtue of its ancient origins and its repeated reaffirmation by the Supreme Court and this court, is so "inextricably woven into the warp and woof of the judicial fabric of this [court]," that it has become the established rule of law on the question of the award of attorneys' fees.

6. The lead Maryland case is *Cohen v. American Home Assurance Co.*, 255 Md. 334, 258 A.2d 225 (1969).

7. Although of very limited applicability, the Supreme Court has also permitted a fee award under certain circumstances in some admiralty cases. *See Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

8. In *Murphy, supra* note 3, we observed that some jurisdictions allow recovery of attorneys' fees incurred in an earlier litigation on a theory of "wrongful-involvement-in-litigation." *See Auxier v. Kraisel*, 466 A.2d 416, 420 (D.C.1983). We first allowed a fee award on that ground in *Brem v. United States Fidelity & Guar. Co.*, 206 A.2d 404, 407 (D.C.1965). Fees are recoverable in such instances because the plaintiff was required to participate in some litigation with a third party at some earlier time due to the defen-

dant's tortious conduct, and the plaintiff is therefore entitled to recover the losses incurred in the earlier action which includes attorneys' fees expended in pursuing or defending that action. *See First Nat'l Bank of Hutchinson v. Williams*, 62 Kan. 431, 63 P. 744, 745–46 (1901) cited in *Murphy, supra*, 63 A.2d at 342 n. 2. The situation is similar to what occurred here: because Potomac Residence prevailed in the declaratory judgment action against Western World, the latter is responsible for the attorneys' fees incurred by Potomac Residence in the earlier case in which it defended against the claim made against it by a third party. Allowance of fees in these circumstances is not an exception to the American Rule, however, because the American Rule applies to fee awards in the current case, not some past litigation.

Washington v. A & H Garcias Trash Haul-
ing Co., 584 A.2d 544, 548 n. 6 (D.C.1990)
(Schwelb, J., concurring and dissenting)
(quoting *In re Petition of Marko Terzich,* 153
F.Supp. 651, 653 (W.D.Pa.1957), *aff'd,* 256
F.2d 197 (3d Cir.1958)). Because that is so,
and because under *M.A.P. v. Ryan* only the
*en banc* court is empowered to overturn set-
tled law, the majority may not adopt an
exception to the American Rule not previous-
ly recognized in this jurisdiction.

The majority also finds support for its
view, that *M.A.P. v. Ryan* is not a bar to its
extension of the American Rule, in *Link v.
District of Columbia,* 650 A.2d 929 (D.C.
1994), where this court upheld the award of
attorneys' fees against a party, found to be in
civil contempt, for nonwillful disobedience of
a court order. The majority reasons that
because one of the three exceptions to the
American Rule only allows for fee awards for
"willful" disobedience, the *Link* court's allow-
ance of fees for *non* willful disobedience con-
stitutes a new exception which the division
deciding *Link* was free to recognize despite
the constraints imposed by *M.A.P. v. Ryan.*
That reasoning is flawed because *Link* did
not establish a new exception.

As I said above, the court in *Alyeska* listed
the three generally recognized exceptions to
the American Rule, including "willful" dis-
obedience of a court order in a civil contempt
action. In making that statement the *Alyes-
ka* court quoted a passage from *Fleisch-
mann, supra,* 386 U.S. at 717–18, 87 S.Ct. at
1406–07. *Fleischmann* in turn cited to *Tole-
do Scale Co. v. Computing Scale Co.,* 261
U.S. 399, 427–28, 43 S.Ct. 458, 466, 67 L.Ed.
719 (1923), where fees were authorized in a
matter involving conduct the Court held to
be in "contempt of the court." *Id.* at 427, 43
S.Ct. at 466. There was no discussion in

*Toledo Scale,* however, whether the contuma-
cious conduct was, or was not, willful, or
whether a finding of willfulness was neces-
sary for an award of fees under this excep-
tion. Although the Supreme Court has not
definitively spoken on this point, virtually all
of the federal courts of appeal that have
addressed the question have concluded that,
in order to invoke this exception to the
American Rule, willfulness need not be
shown, largely because the purpose of civil
contempt is remedial in that it is designed to
compensate the opposing party for its loss.
Because the loss suffered by the injured
party is not dependent upon the motive of
the contemnor, a court may award attorneys'
fees whether the disobedience of the court
order is willful or not. *See Perry v. O'Don-
nell,* 759 F.2d 702, 705 (9th Cir.1985).[9] *See
also McComb v. Jacksonville Paper Co.,* 336
U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599
(1949) ("The measure of the court's power in
civil contempt proceedings is determined by
the requirement of full remedial relief"").
The court in *Link* reached that result for
essentially the same reasons. Therefore, the
most that can be said of *Link* is that it
refined the definition of one of the recognized
exceptions to the American Rule. It certainly
did not establish a new exception and there-
fore cannot be read as authority for a divi-
sion of this court to adopt any "new" excep-
tion it wishes to recognize despite *M.A.P. v.
Ryan.*

The majority also finds support in our
recent *en banc* decision in *Carl v. Children's
Hosp.,* 702 A.2d 159 (D.C.1997) (per curiam)
(*Carl II* ). If anything, what was decided by
the *en banc* court in *Carl II* is consistent
with my view that recognition of any further
exceptions to the American Rule can only be
accomplished by the *en banc* court.

---

**9.** Four other federal circuits have reached the
same result. *See Cook v. Ochsner Found. Hosp.,*
559 F.2d 270, 272 (5th Cir.1977); *TWM Mfg. Co.
v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.
1983); *Commodity Futures Trading Comm'n v.
Premex, Inc.,* 655 F.2d 779, 785 (7th Cir.1981);
and *Sizzler Family Steak Houses v. Western Siz-
zlin Steak House, Inc.,* 793 F.2d 1529, 1535 (11th
Cir.1986). The District of Columbia Circuit has
not ruled formally on the point, but has indicated
that it is in accord with the above cases. *See
Food Lion, Inc. v. United Food & Commercial*

*Workers Int'l Union, AFL–CIO,* 322 U.S.App. D.C.
301, 311 n. 14, 103 F.3d 1007, 1017 n. 14 (1997).
The Third Circuit has left the question open. *See
International Bhd. of Teamsters v. Western Pa.
Motor Carriers Ass'n,* 660 F.2d 76, 84 n. 13 (3rd
Cir.1981). The Second Circuit allowed fees in a
case where the contempt was willful, *see Vuitton
et Fils S.A. v. Carousel Handbags,* 592 F.2d 126,
130–31 (2nd Cir.1979), but has not addressed the
precise question of whether fees are allowed ab-
sent a showing of willfulness.

In *Carl,* the division majority, relying upon four other recent cases, held that only the *en banc* court could authorize exceptions to the employment-at-will doctrine beyond the one recognized in *Adams v. George W. Cochran Co.,* 597 A.2d 28, 32 (D.C.1991). *See Carl v. Children's Hosp.,* 657 A.2d 286, 289 n. 6 (D.C.1995) (*Carl I* ). The per curiam opinion of the *en banc* court, which was supported by eight of the ten judges considering the matter, acknowledged that the *Carl I* majority was correct in so holding when it observed that:

> The division that initially heard this appeal affirmed the trial court's [ruling rejecting Carl's contention that another exception to the at-will doctrine should be recognized,] *because it was bound by precedent to do so. Carl v. Children's Hosp.,* 657 A.2d 286, 289 (D.C.1995), citing *Gray v. Citizens Bank,* 602 A.2d 1096, 1097 (D.C.) ("a division of [this] court is not free to expand the *Adams* exception"), *vacated id.* at 1102, *opinion reinstated on denial of rehearing en banc,* 609 A.2d 1143 (D.C.1992); *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

*Carl II, supra,* 702 A.2d at 159–60 (emphasis added).[10] The per curiam majority went on to say that it "now agrees" that additional "public policy" exceptions may be recognized by a division of the court. It then expressly overruled the *Gray* court's holding that it was "not free to expand the *Adams* exception."[11] *Carl II, supra,* 702 A.2d at 159; *Gray, supra,* at 1097. Thus, because divisions of the court had repeatedly said there was no such authority, action by the *en banc* court was necessary in order to authorize a division of the court to recognize any new exceptions. *See also Gray v. Citizens Bank,* 609 A.2d 1143, 1144 n. 3 (D.C.1992) (en banc)

(Wagner, J., joined by Schwelb, J., and Sullivan, J., dissenting from order denying petition for rehearing en banc as improvidently granted: "As the majority of the panel recognized, only the en banc court can decide the issue appellant raises").

The same principle applies here. As discussed above, we have said, on many occasions, that the American Rule provides that "every party ... shoulders its own attorney fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement or other narrowly defined common exceptions...." *See Oliver T. Carr, supra,* 604 A.2d at 883. At the very minimum, that principle is as well settled as the *Adams–Gray* limitation upon expansions of the at-will doctrine. But before the *en banc* court ruled otherwise in *Carl II,* no division was empowered to authorize new causes of action for fired employees. Therefore, it necessarily follows that only the *en banc* court can authorize new exceptions to the American Rule, or declare, as we did in *Carl II,* that new exceptions may be recognized by divisions of the court applying standards prescribed by the *en banc* court which would govern the exercise of this new authority.[12]

Finally, on the merits, we should follow *Safeway Stores, Inc. v. Chamberlain Protective Serv., Inc.,* 451 A.2d 66 (D.C.1982), and the cases it cites with approval, which, although not precisely on point, present facts which are sufficiently close to the circumstances here to serve as an authoritative basis for declining to recognize any new exception to the American Rule. In those cases the courts reaffirmed the "well-established" rule that an indemnitee is not entitled to an award of attorneys' fees incurred in the

---

**10.** The two dissenters, one of whom was this judge, did not question the majority's conclusion that the division was correct in concluding that only the *en banc* court could authorize a division to recognize new exceptions. Rather, the dissenters were of the view that the *en banc* court should not extend such authority.

**11.** A different majority, consisting of six judges, prescribed the standards a division must apply in determining new public policy exceptions. *See Carl v. Children's Hosp.,* 702 A.2d 159, 163 (D.C. 1997) (Terry, J., concurring plurality opinion

joined by three other judges) ("[T]he recognition of any public policy exception to the at-will doctrine must be solidly based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct."); *see also id.* at 197 n. 2 (Steadman, J., dissenting opinion, joined by this judge) (acquiescing in Judge Terry's concurring plurality opinion).

**12.** See note 10, *supra.*

course of prosecuting a successful claim to establish its right to indemnification. *Id.* at 72, citing *Ranger Construction Co. v. Prince William County Sch. Bd.,* 605 F.2d 1298, 1305 (4th Cir.1979) ("attorneys' fees for establishing ... a right of indemnity ... are ... not recoverable").[13] Unlike the majority, I can discern no meaningful distinction between the circumstances here, where Potomac Residence was denied attorneys' fees incurred in this action to compel Western World to defend a lawsuit, and the circumstances in *Safeway Stores, supra,* and the other cases cited, where the indemnitee was denied fees and costs incurred in its claim against the indemnitor establishing the right of indemnification.

## II.

Not only do I think the majority is without authority to recognize a new exception to the American Rule, I am also of the view the majority's reliance on caselaw from other jurisdictions is misplaced for several reasons. First, it places far too much weight on the Maryland cases recognizing an exception to the American Rule under these circumstances. *See Cohen, supra* note 5. The majority correctly observes that we have always given respectful consideration to decisions of the Maryland Court of Appeals for both historical and other reasons. *Ante* at 1232, note 3; *Ford v. United States,* 616 A.2d 1245, 1252 n. 16 (D.C.1992). But the majority goes beyond that, electing to follow the lead of the Maryland cases on this issue "primarily because of the force of their reasoning." *Ante* at 1232, note 3. The Maryland Court of Appeals, however, has expressed what can fairly be described as misgivings about the reasoning underlying the *Cohen* holding in a recent case in which it declined to recognize still another exception to the American Rule where an insured brought a successful action against its insurance company for breach of a health insurance contract based on a failure to pay promised health benefits. *Collier v. MD–Individual Practice Assoc.,* 327 Md. 1, 607 A.2d 537, 542 (1992). Acknowledging that the cause of an insured seeking a declaration establishing entitlement to health benefits is as deserving as an insured attempting to obtain promised liability coverage, the *Collier* court described the *Cohen* rule as an "anomaly," remarking that "the legal theory supporting this rule remains unrefined." *Id.* (quoting *Continental Cas. Co. v. Board of Educ.,* 302 Md. 516, 489 A.2d 536, 547 (1985)). It declined to extend the exception beyond that recognized by *Cohen,* because to do so would "only compound the anomaly," observing:

> From the standpoint of a strict application of the American rule, there is no logical reason why the successful plaintiff's action on a liability insurance policy for breach of a promise to defend, or to pay the cost of defense, should include counsel fees in prosecuting the breach of contract action, when successful plaintiffs' actions for other breaches of insurance contracts, or for breaches of other contracts, do not ordinarily include those counsel fees. The Maryland rule awarding to the successful insured counsel fees in declaratory judgment or assumpsit actions with liability insurers for breach of the promise to defend or to pay the cost of defense is an exception to the American rule. To extend that exception to health insurers, who breach their contracts by failure to pay covered benefits, will only compound the anomaly.

*Collier, supra,* 607 A.2d at 544. This less than rousing endorsement of this exception to the American Rule does not commend it as one we should adopt.[14]

---

13. *Safeway Stores* also relied upon cases from two other federal circuits. *See Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 510 (10th Cir.1978); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192, 198 n. 9 (8th Cir.1974). The other four federal circuits that have addressed this issue are in accord. *See, e.g., Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306, 315 (2nd Cir.1985); *Thyssen, Inc. v. S/S Eurounity,* 21 F.3d 533, 541 (2d Cir.1994); *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1178–79 (5th Cir.1981); *Dillingham Shipyard v. Associated Insulation Co.,* 649 F.2d 1322, 1328 (9th Cir.1981).

14. The majority also relies upon a decision of a federal court of appeals interpreting Illinois law. *See Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759 (7th Cir.1986). *Ante* at 1232, note 4. That reliance is misplaced for the following reason. *Green* principally relied upon *Trovillion v. U.S. Fidelity & Guar. Co.,* 130 Ill.App.3d 694, 86 Ill. Dec. 39, 474 N.E.2d 953 (Ill.App. 5th Dist.1985),

Second, it is of some significance that a substantial majority of those courts that have been asked to award attorneys' fees in these circumstances, as an exception to the American Rule, have declined to do so. A summary of the authorities in the various jurisdictions addressing this issue is set forth in the appendix to this opinion. As can be observed, thirty-five states have considered the issue in one fashion or another and twenty-two have allowed fee awards in the circumstances presented in this case. Appendix at F and G. Those numbers are misleading, however, because most of the courts that have allowed fee awards did so on grounds not applicable here. For example, twelve states have allowed fee awards based upon either an interpretation of a specific statute addressing this question, the governing declaratory judgment statute, or a court rule. Appendix at C1, D1, and E1. Moreover, the courts in seven states have allowed fee awards based on their interpretation of the insurance contract language, a ground not relied upon by the majority or seriously pressed here. Appendix at B1. But, of those courts that have expressly decided the question of whether attorneys' fees should be awarded as an exception to the American Rule, as Maryland has done, more than two-thirds rejected that course (sixteen [15] out of twenty-three). Appendix at A1, 2 and 3. Thus, although a majority of the states allow fee awards in these circumstances, they have

done so based on statutory provisions or contract language interpretations not applicable here.[16] Only a minority (seven jurisdictions) have adopted the *Cohen* exception to the American Rule. And, unlike this decision by a three-judge panel, each case in those seven jurisdictions was heard by the highest court with all, or nearly all, judges of the court participating.[17] Although the state of the law in other jurisdictions is not dispositive on the question of how we should decide this issue, we nonetheless should not ignore the practice which predominates elsewhere which is contrary to what the majority has decided here today.

Finally, regulation of insurance companies and their relationship with the public is a legislative function of long standing. This jurisdiction is no exception and a not insignificant portion of the District of Columbia Code is devoted to insurance matters. See D.C.Code §§ 35–1101 to 35–4724 (1997 Repl.). In my view any extension of the rule allowing the award of fees in this area is better left to the legislature which has exercised its power to allow the award of attorneys' fees on a number of occasions in recent years in other areas of the law.[18] In that regard, I find support in the rationale of the Supreme Court in *Alyeska* where it observed that although Congress has provided for fee awards under specified circumstances, those actions "can in no sense be construed as a grant of authority to the Judiciary to jettison

---

a decision of an Illinois intermediate appellate court. The *Green* court acknowledged that the appellate courts in two of the state's appellate districts had rejected fee awards in these circumstances, however, it chose to follow *Trovillion*, the only Illinois appellate case permitting fee awards, which was decided by an intermediate appellate court in still another district. *Green, supra*, 806 F.2d at 765. *Trovillion*, however, was recently expressly overruled by the appellate court that decided it. *See Bonnie Owen Realty v. Cincinnati Ins. Co.*, 283 Ill.App.3d 812, 219 Ill. Dec. 294, 300, 670 N.E.2d 1182, 1188 (Ill.App. 5th Dist.1996). Therefore, because *Green*'s holding was based entirely upon a case that was itself later overruled, its precedential value is substantially undercut if not destroyed. The same can be said of the most recent federal decision cited by the majority which, like *Green*, predated *Bonnie Owen*. *See National Cycle Inc. v. Savoy Reins. Co. Ltd.*, 938 F.2d 61 (7th Cir.1991). *Ante* at 1232, note 4.

**15.** Because Ohio appellate courts have decided the issue both ways, it could be said that sixteen and a half of twenty-four states resolving the issue did not award fees.

**16.** The judge's articulation should also address on remand the question whether prejudgment interest is appropriate on the counsel fee to be awarded to Potomac Residence in connection with the declaratory judgment action.

**17.** In *Cohen v. American Home Assurance Co.*, 258 A.2d at 226, five of seven judges of the court participated. One judge did not participate in *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822 (Minn.1980).

**18.** *See e.g.,* D.C.Code § 1–2553(a)(1)(e) (1997 Repl.) (Human Rights Act); D.C.Code § 1–1527(c) (1997 Repl.) (Freedom of Information Act); D.C.Code § 28–3905(k)(1)(B) (District of Columbia Consumer Protection Procedures Act).

the traditional rule against non-statutory allowances to the prevailing party and to award attorney fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award." *Id.* 421 U.S. at 263, 95 S.Ct. at 1624–25. For the same reason, we should not take the step the majority takes here and recognize a new exception to the American Rule. Because the majority holds otherwise, I dissent from that holding.[19]

### III.

With respect to the question of prejudgment interest, it is undisputed that a portion of the damage award represents the out-of-pocket expenses of the insured, while the far larger balance represents the attorneys' fees and expenses due to its *pro bono* counsel. So far as the record shows, Potomac Residence has never paid these fees to counsel; therefore, Potomac Residence is not out-of-pocket for any sum relating to those fees. The trial court, however, made no findings concerning the separate portions, and appeared to treat the two distinct sums as one. Nor did the court state its rationale for denying Potomac Residence's request for prejudgment interest.

While I am unaware of any authority which would allow for prejudgment interest on an award of attorneys' fees and costs that have not yet been paid, there may, or may not, be sufficient justification to support prejudgment interest on an award owed to the nonbreaching party, *i.e.*, the insured, for consequential damages stemming from a breach of contract. *See* D.C.Code § 15–109 (1975 Repl.). Because there was no finding made by the trial court concerning the amounts owed to the insured and *pro bono* counsel separately, and because there is no basis set forth in the record for denying prejudgment interest to the insured on the portion of the award that is attributable to the insured as actual out-of-pocket expenses, upon remand the court should determine the actual amount

of these out-of-pocket expenses, and whether or not the insured is entitled to prejudgment interest on that amount. I would also leave to the trial court, for determination in the first instance, the question whether Potomac Residence is entitled to receive prejudgment interest on the attorneys' fees and costs not yet paid.

### APPENDIX

*case decided by court other than highest court in state

#### A. *Cohen*-Type Exception.

##### 1. Yes (7 TOTAL)

Arkansas: *Equity Mut. Ins. Co. v. Southern Ice Co.,* [232 Ark. 41], 334 S.W.2d 688 (Ark.1960).

Maine: *Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350 (Me.1996).

Maryland: *Cohen v. American Home Assurance Co.,* [255 Md. 334] 258 A.2d 225 (Md.1969).

Minnesota: *Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822 (Minn. 1980).

New York: *Glens $Glen$ Falls Ins. Co. v. United States Fire Ins. Co.,* [34 N.Y.2d 778, 358 N.Y.S.2d 773] 315 N.E.2d 813 (N.Y.1974) (fee award to insured/defendant).

Washington: *McGreevy v. Oregon Mut. Ins. Co.,* [128 Wash.2d 26] 904 P.2d 731 (Wash.1995) (en banc).

West Virginia: *Aetna Cas. & Sur. Co. v. Pitrolo,* [176 W.Va. 190] 342 S.E.2d 156 (W.Va.1986); *see also Hayseeds, Inc. v. State Farm Fire & Cas.,* [177 W.Va. 323] 352 S.E.2d 73 (W.Va.1986).

##### 2. No (16 TOTAL)

Alabama: *State Farm Mut. Auto. Ins. Co. v. Vails,* [278 Ala. 266] 177 So.2d 821 (Ala. 1965).

California: *O'Morrow v. Borad,* [27 Cal.2d 794] 167 P.2d 483 (Cal.1946); *but see*

**19.** I do agree with the majority that the case should be remanded for findings of fact and conclusions of law with respect to the reasonableness of the fee award in the underlying proceeding. I also agree with the majority that the

record supports the trial judge's determination that there was insufficient evidence on which to base an attorneys' fee award on grounds of bad faith.

*Knatt v. California State Auto. Assoc.,* [123 Cal.App.3d 115] 176 Cal.Rptr. 420 (Cal.Ct.App.1981) (according to LEXIS this opinion was withdrawn by court order).

Florida: *Snider v. Continental Ins. Co.,* 519 So.2d 12 (Fla.Dist.Ct.App.1987).

Georgia: *Maryland Cas. Co. v. Sammons,* [63 Ga.App. 323] 11 S.E.2d 89 (Ga.[App.] 1940) (fees not available absent bad faith).

Illinois: *Bonnie Owen Realty Inc. v. Cincinnati Ins. Co.,* [283 Ill.App.3d 812, 219 Ill.Dec. 294] 670 N.E.2d 1182 (Ill.App. 5th Dist.1996); *appeal denied,* [171 Ill.2d 562, 222 Ill.Dec. 429], 667 [677] N.E.2d 963 (Ill.1997); *but see Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759, 765 (7th Cir.1986) (federal court applying Illinois law allowed fee award based on holding in *Trovillion v. United States Fidelity & Guar. Co.,* [130 Ill.App.3d 694] 474 N.E.[2d] 953 (Ill.App. 5th Dist.1985), which was overruled by *Bonnie Owen*).

Indiana: *Mikel v. American Ambassador Cas. Co.,* 644 N.E.2d 168 (Ind.Ct.App. 1994) (fees not available when insured brings suit; no ruling on availability of fees when insurer brings suit).

Iowa: *New Hampshire Ins. Co. v. Christy,* 200 N.W.2d 834 (Iowa 1972) (no fees absent showing of bad faith or fraud).

Louisiana: *Clemmons v. Zurich Gen. Accident & Liab. Ins. Co.,* 230 So.2d 887 (La.Ct.App.1969).

Michigan: *Shepard Marine Constr. Co. v. Maryland Cas. Co.,* [73 Mich.App. 62] 250 N.W.2d 541 (Mich.Ct.App.1976).

Missouri: *American Family Mut. Ins. Co. v. Brown,* 631 S.W.2d 375 (Mo.Ct.App. 1982)

New Hampshire: *Utica Mut. Ins. Co. v. Plante,* [106 N.H. 525] 214 A.2d 742 (N.H.1965).

New Jersey: *Gerhardt v. Continental Ins. Cos.,* [48 N.J. 291] 225 A.2d 328 (N.J. 1966) (N.J. later amended its court rules to permit fee awards in declaratory judgment suits in court's discretion; *see infra* E.1.).

New Mexico: *Lujan v. Gonzales,* [84 N.M. 229] 501 P.2d 673 (N.M.Ct.App.), *cert. denied,* [84 N.M. 219] 501 P.2d 663 (N.M.1972).

Oregon: *First Nat'l Bank v. Malady,* [242 Or. 353] 408 P.2d 724 (Or.1966); *Draper v. Mullennex,* [225 Or. 267] 357 P.2d 519 (Or.1960).

South Carolina: *Hegler v. Gulf Ins. Co.,* [270 S.C. 548] 243 S.E.2d 443 (S.C.1978) (fees allowed, however, based upon interpretation of the insurance contract; *see infra* B.1.).

Tennessee: *Carter v. Virginia Sur. Co.,* [187 Tenn. 595] 216 S.W.2d 324 (Tenn.1948).

### 3. Split Among State's Appellate Courts

#### (1 TOTAL)

Ohio: *Nationwide Ins. Co. v. Harvey,* [50 Ohio App.2d 361] 363 N.E.2d 596 (Ohio Ct.App.1976) (fees available only where "insurer has acted in bad faith or fraudulently or was stubbornly litigious"); *City of Willoughby Hills v. Cincinnati Ins. Co.,* [26 Ohio App.3d 146] 499 N.E.2d 31 (Ohio Ct.App.1986) (awarding fees where insured has not acted in bad faith or maliciously).

### B. Fees Based on Insurance Contract Provision

#### 1. Yes (7 TOTAL)

Colorado: *Wheeler v. Reese,* 835 P.2d 572 (Colo.Ct.App.1992); *Allstate Ins. Co. v. Robins,* [42 Colo.App. 539] 597 P.2d 1052 (Colo.Ct.App.1979) (fees are "reasonable expenses" incurred "at company's request").

Idaho: *Occidental Fire & Cas. Co. v. Cook,* [92 Idaho 7] 435 P.2d 364 (Idaho 1967) (same).

Kansas: *Upland Mut. Ins., Inc. v. Noel,* [214 Kan. 145] 519 P.2d 737 (Kan.1974) (same).

Maryland: *Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc.,* [287 Md. 641] 415 A.2d 278 (Md.1980) (same).

North Dakota: *State Farm Fire & Cas. Co. v. Sigman,* 508 N.W.2d 323 (N.D.1993) (same).

South Carolina: *Hegler v. Gulf Ins. Co.*, [270 S.C. 548] 243 S.E.2d 443 (S.C.1978) (same).

Washington: *Olympic S.S. Co. v. Centennial Ins. Co.*, [117 Wash.2d 37] 811 P.2d 673 (Wash.1991) (en banc) (same).

### C. Fees Based on Declaratory Judgment Statute

#### 1. Yes (3 TOTAL)

North Dakota: *State Farm Fire & Cas. Co. v. Sigman*, 508 N.W.2d 323 (N.D.1993) (statute allows relief "whenever necessary or proper").

Texas: *\*Smith v. Fire Ins. Exch.*, 1996 WL 499453, 1996 Tex.App. LEXIS 4002 (awarding fees to *insurer* under declaratory judgment statute).

Wisconsin: *Elliott v. Donahue*, [169 Wis.2d 310] 485 N.W.2d 403 (Wis.1992).

#### 2. No (6 TOTAL)

Alabama: *Clark v. Exchange Ins. Ass'n*, [276 Ala. 334] 161 So.2d 817 (Ala.1964).

Arizona: *\*State Farm Mut. Auto. Ins. Co. v. O'Brien*, [24 Ariz.App. 18] 535 P.2d 46 (Ariz.Ct.App.1975) (fees not available to insured/plaintiff under statute; court does not decide availability of fees where insured is defendant).

Louisiana: *\*Burton v. Lumbermens Mut. Cas. Co.*, 152 So.2d 235 (La.Ct.App.), *cert. denied*, [244 La. 895] 154 So.2d 767 (La.1963) (statute not for award of monetary judgments; further, fees not available under statute where suit not frivolous).

Oregon: *Samuel v. Frohnmayer*, [308 Or. 362] 779 P.2d 1028 (Or.1989).

Utah: *Western Cas. & Sur. Co. v. Marchant*, 615 P.2d 423 (Utah 1980) (fees not available under statute absent showing of bad faith).

1. For example:
   In all suits in which the judgment or decree of a court is against a life, fire, health, accident, or liability insurance company ... or in a suit for a declaratory judgment under the policy ... the company shall also be liable to pay the

Washington: *Rocky Mountain Fire & Cas. Co. v. Rose*, [62 Wash.2d 896] 385 P.2d 45 (Wash.1963).

### D. Fees Pursuant to Statute to Discourage Coverage Contests [1]

#### 1. Yes (8 TOTAL)

Arkansas: *Hicks v. Allstate Ins. Co.*, [304 Ark. 101] 799 S.W.2d 809 (Ark.1990) (quoting Ark.Code Ann. § 23–79–209(a) (1987)).

Florida: *\*First Nat'l Ins. Co. v. Devine*, 211 So.2d 587 (Fla.Dist.Ct.App.1968) (recovery of fees incurred at trial level; but no statutory authority at time suit was filed for fees on appeal).

Hawaii: *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, [73 Haw. 322] 832 P.2d 733, *recons. denied*, [73 Haw. 625] 834 P.2d 1315 (Haw.1992).

Kansas: *Missouri Med. Inc. Co. v. Wong*, [234 Kan. 811] 676 P.2d 113 (Kan.1984).

Nebraska: *State Farm Fire & Cas. Co. v. Muth*, [190 Neb. 248] 207 N.W.2d 364 (Neb.1973); *see also State Farm Mut. Auto. Ins. Co. v. Selders*, [189 Neb. 334] 202 N.W.2d 625 (Neb.1972).

New Hampshire *Liberty Mut. Ins. Co. v. Home Ins. Indem. Co.*, [117 N.H. 269] 371 A.2d 1171 (N.H.1977).

New Mexico: *Amica Mut. Ins. Co. v. Maloney*, [120 N.M. 523] 903 P.2d 834 (N.M. 1995) (insured entitled to fees under statute where insurer failed to pay claim).

Oregon: *McGraw v. Gwinner*, [282 Or. 393] 578 P.2d 1250 (Or.1978) (fees available under statute only where settlement not made within six months and only where insured recovers money judgment against insurer).

holder of the policy all reasonable attorneys' fees for the defense or prosecution of the suit, as the case may be.
*Hicks v. Allstate Ins. Co.*, 304 Ark. 101, 799 S.W.2d 809, 810 (1990) (quoting Ark.Code Ann. § 23–79–209(a) (1987)).

### E. Fees Based on Court Rule

#### 1. Yes (1 TOTAL)

New Jersey: *New Jersey Mfrs. Ins. Co. v. Consolidated Mut. Ins. Co.,* [124 N.J.Super. 598] 308 A.2d 76 (N.J.Super.Ct.Law Div.1973).

### F. Number of Jurisdictions Awarding Fees Pursuant to *Cohen*–Type Exception, Insurance Contract Provision, a Specific Statute, a Declaratory Judgment Statute, or Court Rule

#### (22 TOTAL)

Arkansas

Colorado

Florida

Hawaii

Idaho

Kansas

Maine

Maryland

Minnesota

Nebraska

New Hampshire

New Jersey

New Mexico

New York

North Dakota

Ohio

Oregon

South Carolina

Texas

Washington

West Virginia

Wisconsin

### G. Number of Jurisdictions Denying Fees on any Ground

#### (13 TOTAL)

Alabama

Arizona

California

Georgia

Illinois

Indiana

Iowa

Louisiana

Michigan

Missouri

Ohio

Tennessee

Utah